UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| VINEYARD INVESTIGATIONS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>E. & J. GALLO WINERY,<br><br>　　　　　Defendant. | Case No. 19-cv-1482-JLT-SKO<br><br>**ORDER GRANTING STIPULATION REGARDING ELECTRONICALLY STORED INFORMATION ("ESI") PROTOCOL**<br><br>(Doc. 86) |

**ELECTRONICALLY STORED INFORMATION ("ESI")**
**PROTOCOL**

Plaintiff Vineyard Investigations ("VI" or "Plaintiff") and Defendant E. & J. Gallo Winery ("Gallo" or "Defendant") (collectively, "the Parties") have, in good faith, met and conferred regarding the preservation and production of electronically stored information ("ESI"), and have agreed that the terms of this ESI Protocol shall apply for the duration of the above captioned case.

**Electronic Discovery**

1. Each Party initially shall bear its own costs of preserving, searching for, and producing ESI. The Parties agree that they will meet and confer should a dispute arise regarding ESI production, and if the Parties cannot reach an agreement, the Parties will request that the Court resolve such disputes.

2. The producing Party shall retain the presumptive right and responsibility to manage and control searches of its data files, including the right to use Predictive Coding/Technology Assisted Review. All searches shall be reasonable and in compliance with the Federal Rules.

3. This ESI Protocol shall apply to all discoverable ESI in the possession, custody, or control of the Parties that can be identified and collected by virtue of being stored, in the ordinary course of business, in a keyword-searchable electronic format, and that can be located after a reasonably diligent search. This ESI Protocol is intended to simplify and organize the parties' search and production of information.

4. The Parties agree that it is not necessary to search for information contained on cellular phones, smartphones (e.g., iPhones), tablets (e.g., iPads), or other similar

2

portable devices, and sources not reasonably accessible due to undue burden or cost, such as company-issued computers of former employees (not in the producing party's possession, custody, or control), and personal computers; cellular phones, smartphones (e.g., iPhones), tablets (e.g., iPads), or other similar portable devices of current and former employees, including associated text message apps; external hard drives of current and former employees; and voicemail systems, inactive legacy computer systems, backup tapes, backup systems, and disaster recovery systems. This paragraph does not apply to legacy computer or backup systems that remain in active use, unless the work-related data from those computers is stored or synchronized to a datacenter or cloud system that can be reasonably searched in lieu of searching backup systems. Each Party reserves the right to request that an opposing party search such devices or systems provided that the requesting party is able to show (1) a particularized and reasonable need for the information contained on such devices or systems; and (2) the unavailability of said information from alternative sources more easily accessible; and (3) the information sought will not impose an undue burden and/or cost on the producing party. The Parties agree to meet and confer in good faith should a dispute arise under this Paragraph, and will request that the Court resolve any such disputes if agreement cannot be reached.

5. The Parties agree that when comprehensive summary documentation of underlying or raw information is reasonably available and relied upon in the ordinary course of business, the production of such summary documentation is presumptively sufficient for purposes of this litigation only. This agreement does not waive any party's right to pursue the underlying or raw information subject to a case-by-case explanation of

need or demonstration by the requesting party that the summary documentation does not contain relevant and material information that would exist in the raw information.

6. Consistent with Paragraph 4, the Parties agree that in this litigation voicemail messages, random access memory, instant messages and chats, backup tapes, information from mobile phones, smart phones or PDAs, including associated text messaging apps, and dynamic fields of databases or log files will be considered not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and, accordingly, need not be searched and will not be subject to production absent a showing of good cause by the requesting Party based upon specific facts that demonstrate a particular need for such evidence that justifies the burden of retrieval, and further subject to the producing Party's claim of undue burden or cost. Subject to Paragraphs 8-9 herein, if duplicative responsive documents are located, the producing Party shall not be required to search for additional copies of such responsive documents absent a showing of good cause that the production of such additional copies is necessary. No Party need deviate from the retention practices it normally exercises with regard to such voicemail messages, random access memory, instant messages and chats, backup tapes, information from mobile phones, smart phones or PDAs (including associated text messaging apps), and dynamic fields of databases or log files that are not stored or retained in the ordinary course of business when not in anticipation of litigation.

7. The Parties shall each produce imaged copies of responsive and non-privileged electronic and paper documents electronically, Bates- stamped, at a resolution of at least 300 dots-per-inch (dpi) or at a resolution used in the routine course of electronic record retention. Those images shall be produced as single-page or multi-page

4

Tagged Image File Format ("TIFFs" or ".tiff format") with accompanying text files where the original document had native text, or the native file format for excel, access database, and other similar files. To the extent it is technically feasible, those image files shall include information corresponding to the following:

| Field Name | Field Description | Sample Values |
|---|---|---|
| BegBates | Bates number for the first page of the document | ABC0000001 |
| EndBates | Bates number for the last page of the document | ABC0000002 |
| BegAttach | Bates number for the first page of parent document | ABC0000001 |
| EndAttach | Bates number for the last page of last attachment | ABC0000005 |
| Confidentiality Designation | The confidentiality designation of the document | Highly Confidential – Attorneys' Eyes Only |
| HASH | The hash value of the document MD5 or SHA-1 | |
| Pages | Number of printed pages of the document | 2 |
| Custodian | Custodian name | Smith, Jane |
| DuplicateCustodian | All custodians who have possession of the document | |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents | Yes |
| DateCreated | Document date created | mm/dd/yyyy |
| DateMod | Document last known modified date | mm/dd/yyyy |
| TimeCreated | Document time created (EST) | hh:mm:ss |
| TimeMod | Document last known modified time (EST) | hh:mm:ss |
| Filename | The name of a file | Filename |
| Author | The Author property of a file | John Doe |

5

| Field Name | Field Description | Sample Values |
|---|---|---|
| Extension | The file extension | Doc |
| PathToText | The relative path to the accompanying text file | \Vol001\txt\ABC00001.txt |
| PathToNative | The relative path to any accompanying native file | \Vol001\Natives\ABC00001.xls |
| Subject | Subject line of Email or Subject value of documents | Text of the subject line |
| DocDate | Email: Send Date & Time; Documents: Last Known Modified Date & Time | mm/dd/yyyy hh:mm:ss |
| DateSent | Email sent date | mm/dd/yyyy |
| DateRec | Email received date | mm/dd/yyyy |
| TimeSent | Email sent time (EST) | hh:mm:ss |
| TimeRec | Email received time (EST) | hh:mm:ss |
| To | All SMTP Address of email recipients, separated by a semi-colon | John.smith@email.com |
| From | All SMTP address of email Author | Bart.smith@email.com |
| CC | All SMTP address of email "CC" recipients, separated by a semi-colon | Jim.james@gmail.com; bjones@yahoo.com |

8. In addition, a producing Party shall not be required to produce in TIFF format when the conversion to image TIFF format would impose unreasonable cost on the producing Party and/or would result in unintelligible documents. Under such circumstances, the producing Party shall notify the requesting Party within a reasonable time after learning of the issue and the Parties shall meet and confer regarding an acceptable production format. The Parties agree that applying global de-duplication to their productions is reasonable.

9. For purposes of this protocol only, "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values at the family level. A Party is only required to produce a single copy of a responsive document and may de-duplicate

      entire document families horizontally (also referred to as globally) across custodians. A metadata field listing all custodians who have possession of the document shall be included in the list of metadata fields for produced documents, to the extent it can be reasonably determined.

10. When processing ESI, Pacific Standard Time (PST) shall be selected as the time zone.

11. When a Party produces a replacement document, the receiving Party must discard or return to the producing Party all copies, including working copies, of the original if the document at issue has been replaced based on a claim of privilege. If the replacement documents are produced at a different Bates number, the producing party will provide a cross-reference file, linking the replacement documents to the original Bates.

12. The Parties shall negotiate separately regarding the production of structured database files and shared drives, if any. To the extent the Parties cannot reach agreement as to a particular database file or shared drive, the Parties will request that the Court resolve any disputes in a manner that takes into account the specifics of the files or drives in question, the narrowly-tailored needs of the requesting Party, and the anticipated burden on the producing Party.

13. While paper documents may necessarily be implicated by certain requests, nothing in this paragraph shall be interpreted as imposing any independent obligation upon the Parties to produce hard copy documents that are duplicative of electronically stored documents. Paper documents included in a Party's production shall be scanned to imaged copies and produced in the same manner specified for electronic documents. The imaged copies of scanned paper documents will be logically unitized (i.e., to

7

preserve page breaks between documents and otherwise allow separate documents to be identified).

14. To the extent the retrieval of paper documents creates an unreasonable burden or undue costs on the producing Party because of the ongoing COVID-19 pandemic, the producing Party agrees to notify the other Party and explain the undue circumstances. The Parties agree that they will meet and confer should a dispute arise regarding paper document production, and if the Parties cannot reach an agreement, the Parties will request that the Court resolve such disputes.

15. The Parties shall produce a "load file" in some mutually agreeable industry-standard format to accompany the images, which load file shall include information about where each document begins and ends and parent-child-relationships to facilitate the use of the produced images through a document management or litigation support system. The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software. The Parties shall meet and confer to discuss documents that present imaging or formatting problems. To the extent exceptions to the foregoing are required, the Parties will meet and confer to discuss alternative production requirements, concerns, or formats.

16. Each page of a produced document shall have a legible, unique numeric identifier Bates number not less than eight digits electronically "burned" onto the page at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Bates number for each document shall be created so as to identify the producing party and the production number (e.g., "BETA00000001"). The Bates numbers will be consistent across a producing Party's

production, contain no special characters and be numerically sequential within a given document. Whenever reasonably possible, attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, whenever possible, each .tiff image will have its assigned production number electronically "burned" onto the image. Native format documents will be produced with TIFF placeholders.

17. If, by their nature, certain documents are best viewable in their native formats, such as Microsoft Excel, Microsoft Access, and other spreadsheet/template configured files, and the documents do not contain material protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, the documents shall be produced in native format. A document containing material protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity need not be produced in native format; however, a Party will not unreasonably withhold such native versions on this basis. The Parties agree that they will meet and confer in good faith should a dispute arise regarding the production of particular documents. Files produced in native format will be named according to the production number it has been assigned (e.g., "BETA00000001.xlxs"), and should be linked directly to its corresponding record in the load file using the PathToNative field. For each native file produced, the production will include a TIFF image slip-sheet indicating the production number of the native file and any confidentiality designation, and stating "Produced in Native Format."

18. The Parties agree that when using any document produced in native format for evidentiary purposes (including without limitations at any hearing, deposition, or trial), the Party seeking to make such use will provide the production number to the

producing party. Any such use shall constitute a representation by the proffering Party through its counsel that the file being used is an exact duplicate of the native file produced. Should any document produced in native format be printed to .tiff format or hard copy, its unique production number and any applicable confidentiality designation shall be placed on each page of such TIFF image or hard copy, and the use for evidentiary purposes of the TIFF image or hard copy shall constitute a representation by the proffering Party through its counsel that the file from which the TIFF image or hard copy was created is an accurate and complete representation of such file.

19. The Parties agree that they will meet and confer in good faith should a dispute arise regarding the production of documents in a particular format.

20. The Parties will accommodate reasonable requests to produce high resolution images if a document produced in this litigation is illegible. A producing Party shall not unreasonably deny such a request. The Parties agree that they will meet and confer in good faith should a dispute arise regarding the production of documents in a particular format.

21. If not otherwise addressed in the Protective Order entered in this case, to the extent that a responsive document contains privileged content, the party may produce that document in a redacted form.

22. Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation or clear indication that it has been redacted. Where a document contains both privileged and non-privileged responsive content the Party shall redact the privileged material and produce the remainder of the document as redacted. Only where privileged content

requires the majority of the document to be redacted, a Party be exempted from producing the document in redacted form. The production of a privileged document in a redacted form does not affect the producing Party's obligation to properly document and substantiate the assertion of privilege over the content as may be reasonably requested.

23. The Parties may use encryption software, such as VeraCrypt, to protect any documents produced on electronic media such as DVDs or hard drives. The decryption password will be provided at the same time the documents are produced.

**Production of E-Mail**

24. The Parties agree that e-mail will be searched and produced as follows. To the extent the Parties cannot reach agreement, the Parties shall request that the Court resolve any disputes.

   a. A producing Party need identify no more than five e-mail custodians whose e-mail the producing Party will search, and a date range for that search. Persons identified in a party's disclosures as having knowledge, whose work-related email is in the party's possession, custody, and control, may be identified by the other party as among the five e-mail custodians.

   b. The producing Party shall identify no more than a total of ten search strings per e-mail custodian that will be run on the e-mail files. The parties will direct search terms to relevant issues and used to locate potentially responsive emails for responsiveness, privilege, and data privacy review.

   c. The Parties agree to meet and confer in good faith regarding any edits to custodians, search strings and date ranges.

d. After the Parties have agreed upon custodians, search strings and date ranges, the Parties will run the initially identified search strings against the e-mail files for the relevant custodian(s) and first provide the number of hits for each search string within twenty business days of identifying the custodian and search strings. If the number of hits resulting from running the selected search strings is unreasonably large, the Parties shall meet and confer to try to resolve the dispute (e.g., by mutually agreeing to narrowed search terms or date ranges). To determine the appropriate search strings, the Parties will exchange the number of hits on modified search strings. The parties will begin producing responsive documents based on the final agreed upon search terms within thirty calendar days.

e. After the search is conducted, the producing Party may review the responsive[1] documents for privilege, confidentiality, and privacy concerns. The producing Party may thereafter designate such documents as protected material under the Protective Order, or redact or withhold privileged information where appropriate, in a manner otherwise consistent with the instant ESI Protocol regarding the production of documents.

f. The Parties agree that indiscriminate terms, such as the producing company's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search

---

[1] The fact that an electronic file is returned by application of the search queries and the protocols used herein does not mean that such document is responsive to any propounded discovery request or is otherwise discoverable in this litigation.

and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production.

g. The Parties may jointly agree to modify the limits on the number of custodians and/or search terms without leave of the Court. To the extent the Parties are unable to reach agreement regarding modifications, the Court may consider contested requests for additional or fewer custodians and/or search terms per producing Party for good cause shown.

h. If a Party produces e-mails, e-mail attachments will be produced as independent documents immediately following the parent e-mail record.  No Party shall be required to produce embedded logos and junk files that are embedded in ESI.

i. For any e-mail produced, fields showing the date and time that the e-mail was sent and/or received, as well as the subject of the message and the complete distribution list, shall be included with the production of such e-mail to the extent such information is available. In addition, parent-child relationships (i.e., the associations between e-mails and attachments) will be preserved.  E-mail attachments will be produced as independent documents immediately following the parent e-mail record.

j. Attachments to emails will not be eliminated from their parent emails.

k. Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message for which no claim of privilege

is made, and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message for which no claim of privilege is made. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

Dated: November 16, 2022

Respectfully submitted,

By: */s/ Darryl M. Woo*
Darryl M. Woo
Sanjeet K. Dutta
Jenny J. Zhang
Elizabeth J. Low
**GOODWIN PROCTER LLP**

Timothy J. Buchanan
Shane G. Smith
**MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP**

*Attorneys for Defendant
E. & J. Gallo Winery*

Dated: November 16, 2022

Respectfully submitted,

By: */s/ Corey Johanningmeier (as authorized 11/15/2022)*

Corey Johanningmeier (SBN 251297)
Brenda Entzminger (SBN 226760)
Denise De Mory (SBN 168076)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Tel.: (650) 351-7248
Fax: (415) 426-4744
cjohanningmeier@bdiplaw.com
benzminger@bdiplaw.com
ddemory@bdiplaw.com

*Attorneys for Plaintiff
Vineyard Investigations*

## **ORDER**

For good cause shown, the Court hereby approves and orders the ESI collection and production protocol pursuant to the parties' stipulation (Doc. 86) set forth above.

IT IS SO ORDERED.

Dated: **November 21, 2022**          /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE