1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10
11  VINEYARD INVSTIGATIONS,                     Case No. 1:19-cv-1482-JLT-SKO

12              Plaintiff,                       ORDER DENYING PLAINTIFF'S MOTION
                                                 TO DISMISS DEFENDANT'S
13        v.                                     INEQUITABLE CONDUCT
                                                 COUNTERCLAIM
14  E. & J. GALLO WINERY,
                                                 (Doc. 55)
15              Defendant.

16

17          The matter before the Court is grounded in patent law and concerns the doctrine of

18  inequitable conduct.  Following the filing of Vineyard Investigations' patent infringement

19  complaint against E. & J. Gallo Winery, Defendant Gallo filed its Answer and asserted seven

20  counterclaims.  Plaintiff filed a motion to dismiss Defendant's inequitable conduct counterclaim

21  pursuant Federal Civil Procedure Rules 12(b)(6) and 9(b).  For reasons discussed below, the

22  Court **DENIES** Plaintiff's motion to dismiss.

23                              **I.      BACKGROUND**

24          On October 1, 2019, Vineyard Investigations filed a patent infringement complaint against

25  E. & J. Gallo Winery (Doc. 1) and amended the complaint on October 22, 2021 (Doc. 52).

26  Plaintiff's first amended complaint alleged Defendant infringed three patents, United States

27  Patent Nos.: 8,528,834 ('834 Patent); 6,947,810 ('810 Patent); and 10,645,881 ('881 Patent).

28  (Doc. 52 at 2.)  The three patents-in-suit "relate to automated irrigation and dispensing of

1   chemicals to crops using data and rules received from sensors and other sources of information"

2   and "claim priority to the same application, Application No. 09/872,477 (the '477 Application)"

3   which named Dr. Paul Skinner as the inventor.  (Doc. 61 at 8.)  The '477 Application was filed in

4   2001 by patent attorney Charles Kulas.  (*Id.*)

5          Defendant timely filed its Answer (Doc. 54) and asserted "seven counterclaims for

6   declaratory judgment of noninfringement and invalidity" of Patent '834, Patent '810, and Patent

7   '881 ("Asserted Patents"), and "a counterclaim of inequitable conduct as to the Asserted Patents."

8   (Doc. 61 at 11.)  Defendant's inequitable conduct counterclaim alleged that Plaintiff owed a duty

9   of disclosure to the PTO when prosecuting the Asserted Patents, and Plaintiff breached its duty

10  when it failed to disclose and/or concealed the Williams Paper[1] and IPM Website[2] information

11  despite the information being material to patentability.  (*See generally* Docs. 54, 61.) Defendant

12  alleged Plaintiff's nondisclosure of the material information constitute inequitable conduct.  (*Id.*)

13         In response, Plaintiff filed a motion to dismiss seeking the dismissal of Defendant's

14  inequitable conduct counterclaim.  (Doc. 55.)  On December 12, 2021, parties filed a "Stipulation

15  to Extend Briefing Schedule on Plaintiff Vineyard Investigations' Motion to Dismiss Equitable

16  Conduct Counterclaims" (Doc. 57), and the Court granted the stipulation (Doc. 59).  In

17  accordance with the stipulated briefing schedule, Defendant timely filed its Opposition on

18  January 18, 2022, and Plaintiff filed its Reply on January 25, 2022.  (Docs. 61, 63.) Pending

19  before the Court is Plaintiff's motion to dismiss Defendant's inequitable conduct counterclaim

20  pursuant Federal Civil Procedure Rule 12(b) and Rule 9(b).  (Doc. 55)

21                    **II.    STANDARD OF DECISION**

22         A motion to dismiss under Federal Civil Procedure Rule 12(b)(6) is a challenge to the

23  legal sufficiency of the allegations set forth in the complaint.  *Navarro v. Block*, 250 F.3d 729,

24

25  [1] "The Williams Paper is an article published in the 1998-1999 volume of the Viticulture Research Report, a periodical published by the California Table Grape Commission in Fresno, CA. (Countercl. ¶76.)  The Williams Paper describes an irrigation trial conducted to determine the effects of various irrigation amounts on vine productivity of a species of table grapes."  (Doc. 61 at 8.)

26

27  [2] "The IPM Website was a publicly available internet site maintained by the University of California's Integrated Pest Management Project.  As of 2000, the home page of the site contained numerous links to pages of information that in turn linked to other pages, requiring considerable navigation by a visitor to find relevant information."  (Doc. 61 at 8.)

28

                                        2

1   732 (9th Cir. 2001).  Dismissal is proper where there is either a "lack of a cognizable legal

2   theory" or "the absence of sufficient facts alleged under a cognizable legal theory.*" *Balistreri v.

3   *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss for

4   failure to state a claim, "the court generally accepts as true the allegations in the complaint,

5   construes the pleading in the light most favorable to the party opposing the motion, and resolves

6   all doubts in the pleader's favor." *Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, 104 F.

7   Supp. 3d 1023, 1030 (E.D. Cal. 2015) (citing *Lazy Y. Ranch Ltd. v. Behrens*, 546 F.3d 580, 588

8   (9th Cir. 2008)).

9        To survive a 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state

10  a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

11  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

12  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a

14  probability requirement, but it asks for more than a sheer possibility that a defendant has acted

15  unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted)); *see also*

16  *Beco*, 104 F. Supp. 3d at 1031.  "Where a complaint pleads facts that are 'merely consistent with'

17  a defendant's liability, it 'stops short of the line between possibility and plausibility for

18  entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

19       Further, though a complaint subject to Rule 12(b)(6) dismissal "does not need detailed

20  factual allegations[;]" the pleading party must provide the "grounds of his entitlement to relief"

21  beyond mere "labels and conclusions" and "formulaic recitation of the elements."  *See Twombly*,

22  550 U.S. at 555.  The "[c]omplaint must describe the alleged misconduct in enough detail to lay

23  the foundation for [the] identified legal claim."  *Beco*, 104 F. Supp. 3d at 1031.  In other words,

24  the complaint must contain "well-pleaded facts" from which the Court can "infer more than the

25  mere possibility of misconduct." *Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. &*

26  *Distribution, Inc.*, 609 F. Supp. 3d 1092, 1099 (C.D. Cal. 2022) (quoting *Iqbal*, 556 U.S. 662 at

27  679)).

28

1

### III.    LEGAL STANDARD

2

**A.  Duty of Candor and Good Faith**

3    Each inventor named in a patent application has "a duty of candor and good faith in

4   dealing with the Office, which includes a duty to disclose to the Office all information known to

5   that individual to be material to patentability." 37 C.F.R. § 1.56(a).  The duty of candor and good

6   faith also extends to a patent applicant's counsel.  *Molins PLC v. Textron, Inc.,* 48 F.3d 1172,

7   1178 (Fed. Cir. 1995).  "The duty to disclose information exists with respect to each pending

8   claim."  37 C.F.R. § 1.56(a).  "A breach of this duty [of candor and good faith] constitutes

9   inequitable conduct."  *Molins,* 48 F.3d at 1178; *see also Hangzhou Chic Intelligent Tech. Co.,*

10  *Ltd. Razor USA LLC*, No. 216-CV-06359-RGK (AJWX), 2016 WL 10518582, at *3 (C.D. Cal.

11  2016)).  "[N]o patent will be granted on an application in connection with which fraud on the

12  Office was practiced or attempted or the duty of disclosure was violated through bad faith or

13  intentional misconduct."  37 C.F.R. § 1.56

14

**B.  Inequitable Conduct**

15   "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars

16  enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285

17  (Fed. Cir. 2011).  To succeed on an inequitable conduct claim at trial, the pleading party must

18  prove that: "(1) an individual associated with the filing and prosecution of a patent application

19  affirmatively misrepresents a material fact, fails to disclose material information, or submits false

20  material information; and (2) the individual does so with the specific intent to deceive the

21  [USPTO]." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850 (N.D. Cal. 2014)

22  (citing *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009)).  A

23  patent applicant is found to have withheld information with the requisite intent to deceive if they

24  "knew of the reference, knew that it was material, and made a deliberate decision to withhold it."

25  *Therasense*, 649 F.3d at 1290.

26

**C.  Federal Civil Procedure Rule 9(b)**

27

1.   Particularity Requirement

28   Federal Civil Procedure Rule 9(b) requires that "[i]n all averments of fraud or mistake, the

4

circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) also governs the pleading standard of inequitable conduct claims, "a broader concept of fraud," and requires a claimant to allege with particularity "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Exergen*, 575 F.3d at 1327 (citing *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)).  The pleading must also "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1328-29.  "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)."  *Pensmore*, 609 F. Supp. 3d at 1099.

### 2.  State of Mind Requirement

Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."  *Exergen*, 575 F.3d at 1327.  "The relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO."  *Id.* Though "knowledge" and "intent" "may be averred generally[,]" a pleading of inequitable conduct under Rule 9(b) must "include sufficient allegations of the underlying facts from which a court may reasonably infer [that a specific individual] acted with the requisite state of mind."  *Id.* at 1328.

A pleading of inequitable conduct will only survive a motion to dismiss if the claimant satisfies both the particularity and state of mind requirements.  Accordingly, a "well-pleaded claim for inequitable conduct must allege facts supporting that (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO."  *Pensmore*, 609 F. Supp. 3d at 1099 (internal quotations omitted) (internal citations omitted)).

## IV.   DISCUSSION

Plaintiff argues for the dismissal of Defendant's inequitable conduct counterclaim

asserting Defendant failed to meet Rule 9(b)'s pleading standard which requires Defendant to plead the substantive elements of inequitable conduct with particularized facts.  (Doc. 55 at 5.) Specifically, Plaintiff argues Defendant failed to plead the "intent element . . . with sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual withheld or misrepresented information with a specific intent to deceive the PTO."  (*Id.* at 6) (internal citations omitted).)  Plaintiff asserts that by providing in-text citations to the Williams Paper and IPM Website "in the text of the patent [application itself], there can be no reasonable inference that [Plaintiff] intended to hide the references from consideration by the Examiner.[3]" (*Id.*)

In Opposition, Defendant urges the Court to deny Plaintiff's motion arguing the inequitable conduct counterclaim satisfied Rule 9(b) pleading requirements.  (Doc. 61.) Defendant reiterated the particularized facts previously alleged in its Answer (Doc. 54) and asserts the inequitable conduct counterclaim:

> sets forth in detail a course of conduct in which the sole named inventor, Dr. Paul Skinner, and his patent attorney, deliberately and selectively concealed information contained in two pieces of prior art: the Williams Paper and the IPM Website, in order to persuade [the PTO] to issue at least two of the patents-in-suit.

(Doc. 61 at 5) (internal citations omitted).)  Defendant argues the "concealed information" was material because:

> they would have revealed elements of [Plaintiff's] patent claims that [Plaintiff] represented as purportedly new and inventive, including at least: (1) use of emitters and sensors located in fixed proximity to plants and (2) a central controller that used external data, such as data retrieved from the Internet, to control the dispensing of materials from such fixed emitters.

(*Id.*)[4]

---

[3] Parties do not appear to dispute that Plaintiff included an in-text citation to the Williams Paper and IPM Website within the patent specification.  Plaintiff provided the following citation for the Williams Papers: "Irrigation of Thompson Seedless Table Grape: Utilization of Crop Coefficients Developed at the Kearney Center for Use at the Other Locations in the San Joaquin Valley" by Larry E. Williams, Don Luvisi, and Michael Costello, and the following URL for the IPM Website: http://www.ipm.ucdavis.edu.  (Doc. 55 at 4) (*see also* Doc. 61 at n.2-3).)

[4] In addition, Defendant argues Plaintiff's blatant disregard for the Court's meet and confer requirement also supports the Court denying Plaintiff's motion.  (Doc. 61 at 17.)  The Court finds it unnecessary to adjudicate this independent

**A. Defendant's inequitable conduct counterclaim satisfies Rule 9(b) pleading standard.**

Plaintiff's motion to dismiss only addressed the pleading sufficiency of the inequitable conduct element of specific intent to deceive. (*See generally* Doc. 55.)  Though Plaintiff does not directly dispute the sufficiency of Defendant's pleading regarding the particularity requisite, the Court will briefly address the Rule 9(b) analysis.

1.  Particularity Requirement

To satisfy the particularity requirements of Rule 9(b), the pleading must identify "the specific who, what, when, where, and how of the material misrepresentation . . . or omission" to the PTO. *Exergen*, 575 F.3d at 1329.   An allegation of inequitable conduct must identify:

- **the "who"**: "name the specific individual associated with the filing or prosecution of the application issuing" the patent, "who both knew of the material information and deliberately withheld or misrepresented[;]" *Beco*, 104 F. Supp. 3d at 1034  (quoting *Exergen*, 575 F.3d at 1329));

- **the "what" and "where"**: "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found[;]" *Exergen*, 575 F.3d at 1329;

- **the "how"**: "state generally that the withheld claims are material and not cumulative to the information already of record." *Id.*  In other words, "explain how the alleged misrepresentation or omission is material to patentability." *Beco*, 104 F. Supp. 3d at 1034.

Regarding a withholding claim, the claimant must also identify "the why": explain "why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.*

Defendant identified the who, inventor Dr. Paul Skinner and patent attorney; the what, when, and where: Patent '834, Patent '810, and Patent '881 which claim priority to the '477 Application filed in 2001 and the nondisclosure of the Williams Paper and IPM Website

---

ground for dismissal because the motion will be denied on its merits.  The parties are admonished to carefully review the operative standing order before undertaking further motions practice.

information regarding the irrigation experiments and phenology models. The "how" allegations

merit some additional discussion given the particularity requirement.

a.   *Rule 9(b): Pleading Materiality*

It is unclear if Plaintiff disputes the materiality of the IPM Website and Williams Paper.

Regarding materiality, Plaintiff stated only that "[t]here is much that can be said in rebuttal to

[Defendant's] discussion about alleged 'but-for' materiality of the IPM website and Williams

[P]aper" but did not provide a legal argument.  (Doc. 55 at 8.)   Though Plaintiff's motion lacks a

materiality argument, the Court deems it necessary to briefly address the matter as it is essential

to the Rule 9(b) analysis.

In addition to the "who, what, when, where, and how" particularity requirement, Rule 9(b)

also requires a claimant to identify "the particular claim limitations, or combination of claim

limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at

1329.  Such allegations "are necessary to explain both 'why' the withheld information is material

and not cumulative and 'how' an examiner would have used this information in assessing the

patentability of the claims." *Id.* at 1329-30.

"[I]nformation is material to patentability when it is not cumulative to information . . . of

record in the application, and [it] establishes, by itself or in combination with other information, a

*prima facie* case of unpatentability of a claim; or [i]t refutes, or is inconsistent with, a position the

applicant takes in asserting an argument of patentability."  37 C.F.R. § 1.56(b)(1) - (b)(2)(ii).

Stated differently, [i]nformation is material if a reasonable examiner would have considered it

important to the patentability of a claim." *Exergen*, 575 F.3d at 1329 (emphasis added) (quoting

R*egents of Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1570 (Fed. Cir. 1997)).  "[T]he

materiality must reach the level of but-for materiality, meaning that 'the PTO would not have

allowed a claim had it been aware of the undisclosed prior art.'" *Therasense,* 649 F.3d at 1291-

92.

In pleading its inequitable conduct claim (Doc. 54), Defendant generally alleged that the

Examiner would have rejected the claims and not have issued the Asserted Patents had Plaintiff

disclosed the prior material art (*id*. at 38).  More specifically, Defendant asserted that at the time

of prosecuting the Asserted Patents, the IPM Website "provided information . . . material to the patentability of at least claims 1, 8, 9, 11, 12, 14, and 15 of the '834 Patent . . . claims 1-36 of the '810 Patent and claims 1-48 of the '881 Patent." (*Id.* at 32.)  Defendant also asserted that the Williams Paper disclosed claim limitations material to the patentability of the Asserted Patents: "claims 1-15 of the '834 Patent," regarding irrigation experiments.[5]  (*Id.* at 39.)  Defendant alleged Plaintiff withheld the IPM Website and Williams Paper information from the PTO despite its materiality.  In alleging materiality, Defendant argued the IPM Website and Williams Paper information is material because it disclosed claim limitations that "anticipates and/or renders" the Asserted Patents obvious.  (*Id.* at 40.)  Thus, "the claims identified would not have been allowed" and the patents would not have been issued.[6]  (*Id.*)

Defendant further clarified the Williams Paper and IPM Website's materiality alleging: During the prosecution of the '810 Patent, Plaintiff "amended the pending claims to recite sensors and emitters in 'fixed proximity to and 'associated with' one or more plants" and represented to the examiner "that these limitations are 'not disclosed by nor made obvious in view of the prior art.'" (Doc. 61 54 at 4010.)  As a result, "[t]he Examiner allowed the claims to issue because, based on the prior art before him, none of the references disclosed sensors and emitters in fixed proximity to a plant."  (*Id.*)  However, "[h]ad [Plaintiff] provided the Williams Paper to the Examiner, the claims of the '810 Patent at least would have been found anticipated by or rendered obvious by the Williams Paper, and would not have issued."  (*Id.* at 40-41.)  Similarly, during the prosecution of '834 Patent, Plaintiff amended the pending claims to recite "wherein the central controller is responsive to a rule for controlling material dispensing, wherein the rule is retrieved from a location on the Internet" and "remarked that this limitation is 'not disclosed by or made obvious in view of the prior art.'"  (Doc. 54 at 35) ("The prior art completely fails to disclose

---

[5] For example, the Williams Paper discloses "irrigation trials" in which "emitters were used to regulate "water amounts in the various irrigation treatments, sensors placed in rows of grapevines, sensors in fixed proximity to the plants, and external data."  (Doc. 54 at 40) (internal citations omitted).)

[6] Regarding '834 Patent, Defendant identified "several claim limitations" disclosed on the IPM Website (*see* Claims 7, 8, 9, 11, and 12), regarding "phenology models" ("crop growth models"), "a degree day insect model", and "plant disease models" and asserted these claim limitations were absent from the patent examination record, despite being material to "the apparatus claim 1."  (Doc. 54 at 33-34.)

these limitations relating to obtaining and using a 'rule for controlling material dispensing' wherein the rule is 'retrieved from a location on the Internet.'").)  Thus, Plaintiff "considered this limitation as key to overcoming the prior art considered by the Examiner."  (*Id.* at 35-36) ("The IPM Website is material prior art because [Plaintiff] relied on other portions of the IPM Website to oppose one of the obviousness rejections raised by the Examiner.").)

Defendant identified "the particular claim limitations, or combination of claim limitations that are supposedly absent from the information of record" and alleged its but-for materiality. *Exergen*, 575 F.3d at 1328, 1329.  The Court finds Defendant successfully pleaded the materiality requirement alleging the Williams Paper and IPM Website information as material.

### 2.  The State of Mind Requirement

Plaintiff's motion to dismiss focuses on the state of mind requirement and the particularity required to allege "specific intent to deceive."  Plaintiff argues Defendant's allegations failed to plead facts from which the Court may reasonably infer a specific intent to deceive because Plaintiff disclosed the references at issue.  Plaintiff asserts the Williams Paper and IPM Website were disclosed to the PTO because "they [were] cited for the Examiner and the world to see in the text of the patent specification itself [:]"

> Sensor data can be used in sophisticated analysis to control irrigation and application of other chemicals or materials. For example, the system can control application of materials according to methods described in academic papers such as IRRIGATION OF THOMPSON SEEDLESS TABLE GRAPES: UTILIZATION OF CROP COEFFICIENTS DEVELOPED AT THE KEARNEY CENTER FOR USE AT OTHER LOCATIONS IN THE SAN JOAQUIN VALLEY, by Larry E. Williams, Don Luvisi and Michael Costello; published in Viticulture Research Report Volume XXVII, 1998–99, California Table Grape Commission, Fresno, Calif. 93711 which is hereby incorporated by reference as if set forth in full in this document for all purposes. Publicly available data such as at http://www.ipm.ucdavis.edu/, etc., can be used to provide rules and guidelines for controlling material dispensing according to the system of the present invention.

(*See* Doc. 55 at 4) (emphasis in the original).)  Therefore,

> no one could reasonably infer that a person specifically intended to deceive by giving the Examiner a URL and a citation—disclosing them in the most open way possible by putting them in the text of the patent itself.

10

1  (Doc. 55 at 5.)  Plaintiff does not dispute noncompliance with USPTO rule requiring patent

2  applicants to provide printed copies to the Examiner.  (*Id.*) Instead Plaintiff maintains that by

3  incorporating the references into the "Detailed Description of the Invention section of the patent

4  specification" itself (*see* Doc. 61 at 13), it negates an intent to deceive.  (Doc. 55 at 5.)  Plaintiff

5  contends that "If anything, what they did to disclose the references was more obvious and open

6  than putting the references in an information disclosure statement (IDS). . ." (*Id.* at 9.)

7  Accordingly, "even if the form of that disclosure breaks administrative rules," the Court cannot

8  reasonably infer an intent deceive based on Defendant's alleged facts. In response, Defendant

9  asserts that Plaintiff deliberately disregarded the "basic procedures mandated by regulation" and

10  despite "knowing the requirements of [the] rules" "only cited to the Williams Paper and IPM

11  Website in a location the examiner would not have been alerted to look for material prior art."

12  (Doc. 61 at 14.)  Defendant asserts that Plaintiff did not disclose the references as material prior

13  art during the "prosecution of the '810 and '834 Patents" and "affirmatively represented to the

14  examiner that the prior art [, the Williams Paper and IPM Website,] did not disclose information"

15  relevant to the examiner's assessment of novelty and obviousness.  (*Id.*)

16  **B.  Defendant's allegations support an inference of a specific intent to deceive.**

17         1.  Rule 9(b): Pleading Knowledge

18       Pursuant Rule 9(b), a pleading of inequitable conduct must also "include sufficient

19  allegations of underlying facts from which a court may reasonably infer that a specific individual

20  (1) knew of the withheld material information or of the falsity of the material misrepresentation,

21  and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."

22  *Exergen*, 575 F.3d at 1328–29.  "A reasonable inference is one that is plausible and that flows

23  logically from the facts alleged, including any objective indications of candor and good faith."

24  *Exergen*, 575 F.3d at 1329 n.5.

25       Plaintiff does not dispute knowing the IPM Website and Williams Paper contained

26  material information.  In fact, Plaintiff's argument, to some extent, concede knowledge (and

27  materiality).  The essence of Plaintiff's argument is that the in-text citations provided in the patent

28

specification, referenced the IPM Website and Williams Paper; thus disclosed the material information to the PTO.  Moreover, there is no duty to disclose information that is not material. 37 C.F.R. § 1.56 ("There is no duty to submit information which is not material to the patentability of any existing claim.") Plaintiff does not dispute owing the duty of disclosure to the PTO regarding the IPM Website and Williams Paper.  Despite these minor concessions, the Court turns to the pleading and addresses the "knowledge" prong.

To sufficiency plead knowledge, Defendant's pleading must provide a factual basis to infer Plaintiff owed a duty of disclosure in prosecuting the Asserted Patents and knew of the alleged material information disclosed in the IPM Website and Williams Paper.  *See Exergen*, 575 F.3d at 1327.  Defendant's pleading sets forth the following facts:  Plaintiff "knew the particular contents of [the Williams Paper and IPM Website]" because "in the initial patent application, [Plaintiff] included citations to both documents in the specification to support a portion of the description of their alleged invention."  (Doc. 61 at 5-6) (*see also* Doc. 54 at 34).)  "[T]hen, many years later, after two of the patents-in-suit had issued, [Plaintiff] pointed to an archived version of the IPM Website and submitted a copy of the Williams Paper for the first time to overcome an examiner's rejection of newly submitted patent claims." (*Id.*) (*see also* Doc. 54 at 39).) The Court finds that Defendant's pleading alleges facts that support a reasonable inference that Plaintiff knew of the material information contained in the Williams Paper and IPM Website.

### 2.  Rule 9(b): Reasonable Inference

Plaintiff argues the pleading lacks sufficient facts to reasonably infer a specific intent to deceive.  Foremost, the Court finds Plaintiff's argument unavailing because it appears to misconstrue Rule 9(b) pleading standards with Defendant's clear and convincing burden at trial. "In deciding a motion to dismiss an inequitable conduct claim, the level of scrutiny applied to the pleadings does not appear to be so exacting as to require clear and convincing evidence or meeting the single-most-reasonable-inference burden." *Exergen*, 575 F.3d at 1326-27.

Rule 9(b) governs pleading sufficiency which requires a pleading of inequitable conduct to "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual . . . withheld or misrepresented this information with a specific intent to

1  deceive the PTO." *Exergen*, 575 F.3d at 1328–29 (emphasis added).  In other words, the pleading

2  party "must allege facts from which it is plausible that the [patent] applicant had an intent to

3  deceive." *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 2:11-CV-6519-MRP, 2011 WL

4  7461786, at *3 (C.D. Cal., 2011).  Rule 9(b) does not require a pleading party to allege facts

5  "supporting the conclusion that specific intent to deceive is the single most reasonable inference

6  to be drawn from the factual allegations." *Pensmore*, 609 F. Supp. 3d at 1104 (emphasis added);

7  *see also Hangzhou*, 2016 WL 10518582, at *2 (quotations omitted)).  At this stage of pleading,

8  Rule 9(b) only requires Defendant to "allege facts sufficient to raise a reasonable inference of

9  specific intent to deceive." *Pensmore*, 609 F. Supp. 3d at 1104.

10       Regarding a reasonable inference, "[t]he inference need not be the most reasonable

11  inference, but merely a reasonable inference beyond the mere possibility that the applicant had an

12  intent to deceive. *Human Genome*, 2011 WL 7461786, at *3.  "[T]he mere fact that an applicant

13  omitted a piece of prior art is inadequate by itself" to infer an intent to deceive.  *Id.*  "In that case,

14  intent to deceive is a mere 'possibility' because that fact is 'merely consistent with' intent to

15  deceive'" and "stops short of showing that intent to deceive is plausible." *Id.*  Thus, "[a]

16  reasonable inference is one that is plausible and that flows logically from the facts alleged,

17  including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

18            a. *Duty to Disclose*

19       Rule 1.56(a) requires a duty to disclose all information known to be material to

20  patentability to the PTO.  "The duty to disclose . . . is deemed to be satisfied if all information

21  known to be material to patentability of any claim issued in a patent was cited by the Office or

22  submitted to the Office in the manner prescribed by §§ 1.97(b) – (d) and 1.98." 37 C.F.R § 156.

23  These Sections requires an applicant to disclose known material information in the form of an

24  Information Disclosure Statement (IDS).  "There is no duty to submit information which is not

25  material to the patentability of any existing claim." 37 C.F.R § 156(a).  "[N]o patent will be

26  granted on an application in connection with which fraud on the Office was practiced or

27  attempted or the duty of disclosure was violated through bad faith or intentional misconduct." *Id.*

28

1      As previously discussed, Plaintiff does not directly dispute the materiality of the Williams

2  Paper or IPM Website.  Nor does Plaintiff dispute knowledge of the Williams Paper and IPM

3  Website.  Thus, by admittance, or acquiescence, Plaintiff concedes that the references are material

4  to the patentability of the Asserted Patents.  Thus, Plaintiff was required to disclose the Williams

5  Paper and IPM Website information to the PTO.  Sections 1.97 and 1.98 require an applicant to

6  disclose material information by means of an Information Disclosure Statement.  Plaintiff

7  included an IDS but omitted the Williams Paper and IPM Website information from the IDS.  By

8  the plain language of section 1.56(a), Plaintiff did not disclose material information to PTO.

9  Moreover, despite knowing the requirements, Plaintiff included a citation to both references in the

10  text of the patent application and "at no time before or during the prosecution of the '810 and

11  '834 Patents . . . disclose the references as material prior art, bring them to the examiner's

12  attention as such, or provide the examiner with copies of them."  (Doc. 61 at 14) (*see generally*

13  Doc. 54 at 38-40).)

14      Plaintiff argues that a finding of intent to deceive is unreasonable or illogical considering

15  in-text citations were provided.  The Court disagrees.  "[A]n inference of intent to deceive is not

16  illogical where. . . a patentee, had disclosed information about a . . . patent, [but] omitted material

17  nonpatent information related to the disclosed patent." *Hangzhou Chic*, 2016 WL 10518582, at

18  *6.  Plaintiff provided in-text citations but "repeatedly omitted [the Williams Paper and IPM

19  Website] from their Information Disclosure Statements that they represented to the PTO listed all

20  material prior art known to [Plaintiff and] . . . affirmatively told the patent examiner that nothing

21  in the prior art disclosed "fixed-proximity sensors" and "internet-retrieved irrigation rules" when

22  they knew those technologies were disclosed in the documents they had withheld."  (Doc. 61 at

23  5.)  In addition, while prosecuting the '810 and '834 Patents, Plaintiff "submitted numerous

24  patent claims that recited features disclosed in the Williams Paper and IPM Website," and "at no

25  point did they disclose those references as prior art in an IDS, or present copies of either reference

26  to the examiner as they were required to do under their duty of candor."  (Doc. 61 at 10.)

27      Considering the omission of Williams Paper and IPM Website from the Information

28  Disclosure Statements and prior material art section of the Asserted Patents, it is reasonable to

1    infer an intent to deceive the PTO.  Based on the alleged facts that Plaintiff had knowledge of the

2    Williams Paper and IPM Website, knowledge of their materiality, knowledge of the USPTO rules

3    and regulations requiring disclosure, yet omitted the Williams Paper and IPM Website from the

4    IDS, and subsequently failed to identify the Williams Paper and IPM Website as prior material

5    art, it is plausible that Plaintiff withheld the Williams Paper and IPM Website information from

6    the PTO with a specific intent to deceive.  "While intent to deceive the PTO may be found as a

7    matter of inference from circumstantial evidence, circumstantial evidence cannot indicate merely

8    gross negligence."  *Molins*, 48 F.3d at 1181.  "[C]ourts must view the involved conduct 'in light

9    of all the evidence' and must then determine whether that conduct in its totality manifests a

10   sufficiently culpable state of mind to warrant a determination that it was inequitable."  *Id.*

11   (quoting *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 809 (Fed. Cir. 1990)).

12        Plaintiff's omission "makes the inference not merely logical but plausible" that "these

13   documents were withheld when they would have precluded issuance [of the Asserted Patents], but

14   selectively presented when they were needed to establish patentability."  *See Pensmore*, 609 F.

15   Supp. 3d at 1104 (finding the party's alleged knowledge and concealment of material information

16   support "an inference concerning intent to deceive.")).  Moreover, the IPM Website citation that

17   Plaintiff provided was a URL homepage link that included links to both material and immaterial

18   information.  Plaintiff's citation did not provide a direct link to the referenced material

19   information.  Taken the totality of the allegations, inferring an intent to deceive is reasonable.

20        Lastly, though Plaintiff's contention that in-text citation was an administrative misstep

21   and not an intent to deceive the PTO is also plausible.  At the pleading stage the inference of

22   inequitable conduct need not be "the single most reasonable inference" drawn from the alleged

23   facts.  *Exergen*, 575 F.3d at 1329 n.5.  Thus, Defendant must merely plead facts sufficient to raise

24   a reasonable inference of specific intent to deceive.  Taking the allegations in the light most

25   favorable to Defendant, and "acknowledging the Federal Circuit's guidance that direct evidence

26   of intent is rare," (*Pensmore*, 609 F. Supp 3d at 1104) the Court concludes that Defendant has

27   pleaded sufficient facts from which a reasonable inference of intent to deceive may be drawn.

28

1

## V.    CONCLUSION

2        For reasons discussed, the Court finds Defendant's pleading of inequitable conduct

3   (Doc. 54) satisfies the Rule 9(b) pleading requirements.  According, Plaintiff's motion to dismiss

4   Defendant's inequitable conduct counterclaim is **DENIED**.

5

6   IT IS SO ORDERED.

7        Dated:   **March 27, 2024**

                                          UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28