**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINEYARD INVESTIGATIONS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>E. & J. GALLO WINERY,<br><br>　　　　Defendant. | Case No. 1:19-cv-01482-JLT-SKO<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR CLARIFICATION**<br><br>(Doc. 99) |

Vineyard Investigations filed a complaint against E.&J. Gallo Winery (Doc. 52) alleging patent infringement of three patents[1] that "claim an invention related to the irrigation and delivery of various material, such as grapevines in a vineyard." (Doc. 94 at 1.) After the parties submitted joint claim construction and prehearing statements (Docs. 68, 69) and several briefs supporting its proposed claim constructions (Docs. 70, 73, 76, 77, 79), the Court issued its claim construction order (Doc. 94). Plaintiff now moves for clarification of the order and scope of its indefinite ruling. (Doc. 99.) Plaintiff asserts "[a] brief clarification would resolve [the] disagreement . . . about how to interpret the Order." (Doc. 99 at 5.) Within the motion, Plaintiff includes its interpretation of the Court's order (Doc. 94) and proposed construction of the claim term "potential evapotranspiration data" of the '881 Patent. (Doc. 99.) The Court finds that

---

[1] The three asserted patents are US Patent No. 6,947,810 (the '810 Patent), US Patent No. 8,528,834 (the '834 Patent), and US Patent No. 10,645,881 (the '881 Patent).

1

clarification is appropriate and considers the legal arguments below.

## I. BACKGROUND

### A. The '881 Patent

The '881 Patent, entitled "Plant Growing System Using External Data," was issued from the USPTO after Plaintiff filed its initial compliant (Doc. 1), and with leave from the Court, Plaintiff amended its complaint to include the newly issued patent (Doc. 52). (Doc. 94 at 4.) The '881 Patent's specification shares significant overlap with the '834 Patent and the '810 Patent; however, it includes an insert from the Williams Paper[2], a prior art reference. (*Id.*) "[T]he Williams Paper describes an experiment conducted in two vineyards in the San Joaquin valley to evaluate various irrigation treatments and describes a method for modeling certain data related to those irrigation treatments." (*Id.*) The '881 Patent also contains an additional limitation claim that reads using "external data [that] is derived, at least in part, using a model including potential data." (*Id.* at 4-5.)

### B. Procedural Background[3]

On April 25, 2022, the parties submitted joint claim construction and prehearing statements, and in accordance with Local Patent Rule 4-3(a),4, set forth agreed-upon claim constructions for five terms. (Doc. 68 at 3.) The Court adopted the constructions as listed in the parties' joint statement. The parties also identified the full list of disputed patent terms, its respective constructions, and supporting evidence pursuant to Patent Rule 4-3(b). (*Id.* at 3-4) (*see also* Doc. 69.) In accordance with Rule 4-3(c), the parties selected ten most significant terms for the Court to construe and jointly identified three terms/category of terms: the "associating"/ "associated" with terms; the "receiving"/ "transmit" signals; and "potential data." (Doc. 68 at 4-5.) Plaintiff separately identified three terms: "emitting means for mitting the material onto the plants"; "sensing means for sensing a condition of growth of the plants"; "control system means

---

[2] Larry E. Williams, et al., Irrigation of Thompson Seedless Table Grapes: Utilization of Crop Coefficients Developed at the Kearney Center for use at Other Locations in the San Joaquin Valley, 27 Viticulture Research Report (1998-99).

[3] The Procedural Background section is taken from the Court's "Order Regarding Claim Construction" (Doc. 94). (*See* Doc. 94 at 9.)

for receiving signals from a sensor." (*Id.*) Defendant identified four terms/category of terms: "in [fixed] proximity to"; "in response to"/ "responsive to"; and "control system coupled to [the emitters/one or more sensors]." (*Id.* at 5-6.) In briefing, Defendant narrowed its disputed terms to six terms/categories. (Doc. 77 at 5 n.1.) The following table contains the six disputed terms for construction and the parties' proposed constructions:

| | **Disputed Claim Term** | **Vineyard's Construction** | **Gallo's Construction** |
|---|---|---|---|
| 1. | "external data" | Plain and ordinary meaning | Indefinite |
| 2. | "potential data" | "[D]ata relating to the predicted, expected, or typical growth, transpiration or evaporation, such as growth models, potential evapotranspiration, leaf water potential, or crop coefficients" | Indefinite |
| 3. | "in [fixed] proximity to" | Plain and ordinary meaning | Indefinite |
| 4. | the "associat[ion]" terms<br><br>e.g., "sensor(s)/emitter(s) associated with" plant(s) | Plain and ordinary meaning | e.g., senor(s)/emitter(s) "linked with" particular plant/plants, so as to permit selective delivery of material and irrigation control with respect to the particular plant/plants, and not merely to a field, region, or plot |
| 5. | "control system **coupled to** one or more of the sensors for receiving a signal from the sensors | Plain and ordinary meaning | control system **connected** to one or more of the sensors **via wire or cable for communication** to allow receiving a signal from the sensors |
| | "control system coupled to the emitters for controlling the emission of the material" | Plain and ordinary meaning | control system **connected** to the emitters **via wire or cable for communication** to allow **independent control of the emission of material from each emitter** |
| 6. | "transmitted to"<br><br>"receiving a signal from" / "receive signals from" / "is received from" | Plain and ordinary meaning | The claimed functions are performed without manual entry or human intervention |

| | | |
|---|---|---|
| | "in response to"/"responsive to" "controlling material dispensing" / "used to control conveyance of the material to the vegetation" | | |

(Doc. 94 at 9-11.)

**C.     The Court's Claim Construction Order (Doc. 94)**

The Court issued its Claim Construction Order (Doc. 94) (Order) on July 7, 2023, that adopted the following claim constructions:

| Claim Term | Construction |
|---|---|
| "emitting means for emitting the material onto the plants," | Function: "emitting materials onto the plants" Structure: "one or more emitters is in fixed proximity to and associated with each of the plants" |
| "sensing means for sensing a condition of growth of the plants" | Function: "sensing a condition of growth of the plants" Structure: "one or more sensors is in fixed proximity to and associated with each of the plants" |
| "control system means for receiving signals from a sensor associated with the particular plant and for controlling emission of the material to the particular plant via one or more emitters associated with the particular plant" | Function: "receiving signals from a sensor associated with the particular plant and controlling emission of the material to the particular plant via one or more emitters associated with the particular plant." Structure: "control system 200" |
| "particular plan" | "particular plant" |
| "from me sensors" | "from the sensors" |
| "external data" | Plain and ordinary meaning |

4

| "potential data" | Indefinite |
|---|---|
| "in [fixed] proximity to" | Construing "proximity" to mean "close enough to sense information specifically from, or deliver material specifically to,' the given plant, plants, or vegetation, or group." |
| "associating one or more sensors and emitters with each of the plurality of plants so that each plant has associated sensors and emitters" | "associating one or more sensors and emitters with each of the plurality of plants, but not merely a field, region, or plot of land, so that each plant has associated sensors and emitters" |
| Sensor(s)/emitter(s) "associated with" plant | Plain and ordinary meaning |
| "the particular plant's associated emitter in response to a signal from the particular plant's associated sensor" | Plain and ordinary meaning |
| "each plant has associated sensors and emitters" | Plain and ordinary meaning |
| "each sensor is associated with one or more particular plan in the vegetation" | "each sensor is associated with one or more particular plant in the vegetation, but not merely a field region, or plot of land" |
| "coupled to" | Plain and ordinary meaning |
| "transmitted to" "receiving a signal from" "receive signals from" "is received from" "controlling material dispensing" | Plain and ordinary meaning |

(Doc. 94 at 46-47.)

Relevant to the motion before the Court, is the Court's construction of the challenged claim term "potential data" and finding the term indefinite (Doc. 94 at 46). Plaintiff requests the

5

Court to clarify the boundaries of its indefinite ruling and whether the ruling extends to the '881 Patent Claim 29 term "potential evapotranspiration data" ("potential ET data").  (Doc. 99.)  However, "potential ET data" was not among the disputed terms the parties selected for claim construction, so the Court did not construe the clam and he Order does not directly address the definiteness of dependent Claim 29.  Nevertheless, in construing the term "potential data" in the asserted claims, the Court did note that "[t]o the extent [Plaintiff's] proposed supplemental sur-sur-reply suggests limiting 'potential data' to mean only potential ET . . . such a limiting instruction would fail for lack of claim differentiation." (Doc. 94 at 20, n.6.)  Any other reference to Claim 29 serves merely as a note that Claim 29 "gives an example of 'potential data.'" (*Id.* at 18.)

Ultimately, Plaintiff urges the Court to adopt its interpretation: the Court's ruling of the term "potential data" as "indefinite" is limited to the '881 Patent independent Claim 1 and Claim 10 and does not apply to the '881 Patent dependent Claim 29 which states "wherein potential data includes potential evapotranspiration data." (Doc. 99 at 6.)  For reason set forth below, the Court rejects Plaintiff's interpretation and **ADOPTS** the claim construction that follows.

## II.   LEGAL STANDARD

**A.   Claim Construction**

Claim construction is a question of law to be determined by the court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro*, 521 F.3d at 1360.  Terms contained in claims "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art [("POSA")] in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  "There are only two circumstances where a claim is not entitled to its plain and ordinary meaning:

'1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *simplehuman, LLC v. iTouchless Housewares and Products, Inc.*, No. 4:19-CV-02701-HSG, 2020 WL 7342739 (N.D. Cal. 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

The Federal Circuit has set forth rules and guidelines for district courts engaged in claim construction. *See generally Phillips*, 415 F.3d. For example, the Federal Circuit requires district courts to first consider the intrinsic evidence which consists of the claim language itself, the patent specification, and the patent prosecution history. *Id.* at 1312-17. The Federal Circuit emphasizes the importance of intrinsic evidence and explains, that the language of the claims "provides substantial guidance as to the meaning of a particular claim terms," (*Id.* at 1314), "both through the context in which the claim terms are used and through comparison with other claims in the patent" (*simplehuman*, 2020 WL 7342739, at 832) (citing *Phillips*, 415 F.3d at 1314). Likewise, the patent specification holds valuable information and is "the single best guide to the meaning of a disputed term" and "usually dispositive." *Phillips*, 415 F.3d at 1315. However, the court must not read limitations from the specification into the claims. *Id.*; *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (explaining that "claims must be construed so as to be consistent with the specification"). The patent prosecution history, the last form of intrinsic evidence, is also important. *Phillips*, 415 F.3d at 1315. Though it generally lacks the same "clarity" as the specification, the prosecution history provides "evidence of how the PTO and the inventor understood the patent." *Id.* at 1317.

Courts may also consider extrinsic evidence such as "expert and inventor testimony, technical dictionaries, and learned treatises" to help construe the claims. *Id.* at 1317-18. Although extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language" such evidence may prove valuable to the court's assessment. *Id.* at 1317. For example, expert and inventor testimony can help "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular

meaning in the pertinent field." *Phillips*, 415 F.3d at 1318.   Similarly, "dictionaries may reveal what the ordinary and customary meaning of a term would have been to a person of ordinary skill in the art at the time of the invention."  *simplehuman*, 2020 WL 7342739 at 832 (citing *Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.,* 744 F.3d 715, 722 (Fed. Cir. 2014) ("Terms generally carry their ordinary and customary meaning in the relevant field at the relevant time, as shown by reliable sources such as dictionaries, but they always must be understood in the context of the whole document—in particular, the specification (along with the prosecution history, if pertinent).").

**B.    Invalidity**

    1.  Definiteness

All patent claims are subject to the requirements outlined under 35 U.S.C. § 112. Embedded within the provisions is the definiteness requirement which states that the patent specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Patent claims that fail to meet the "particularly pointing out and distinctly claiming" requirement, are invalid for indefiniteness.  *Id.*  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Comm., LLC v. Int'l Trade Com'n,* 161 F.3d 696, 705 (Fed. Cir. 1998).

"Determining whether a claim is definite requires an analysis of 'whether one skilled in the art would understand the bounds of the claim when read in light of the specification…'" *Id.* (citing *Miles Lab., Inc. v. Shandon, Inc.,* 997 F.2d 870, 875 (Fed. Cir. 1993)).  A claim is indefinite when "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Maxell, Ltd. v. Amperex Tech. Ltd.*, 94 F.4th 1369, 1372 (Fed. Cir. 2024) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

The reasonable certainty standard "'mandates clarity, while recognizing that absolute precision is unattainable.'" *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.,* 30 F.4th 1339, 1347 (Fed. Cir. 2022) (quoting *Nautilus*, 572 U.S. at 910).  The claims must provide "objective

boundaries" but the "'patentee need not define his invention with mathematical precision.'" *Id.* (quoting *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019)). Descriptive words or terms of degree do not necessarily render the claim indefinite, even if it results in a broad claim scope. *Id.* Nor does the specification's failure to explicitly define a term does not necessarily result in a finding of indefiniteness. *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 904 (Fed. Cir. 2020). The specification and context of other claim terms may provide "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims]." *In re Marosi,* 710 F.2d 799, 803 (Fed. Cir. 1983). However, inconsistencies in claim usage among the claims and written description may create sufficient uncertainty as to the term's meaning. *TVnGO, Ltd. v. LG Electrs., Inc.*, 861 F. App'x 453, 457-60 (Fed. Cir. 2021) (holding claim terms indefinite in part because the dependent claim terms used "the disputed phrase in a way that contradicts the independent claims"). Thus, an evaluation of claim indefiniteness "involves consideration of primarily the intrinsic evidence, . . . the claim language, the specification, and the prosecution history" *Enzo Bichem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010) (internal quotations omitted).*

Lastly, the burden rests with the patentee challenger or moving party. and "must be proven by clear and convincing evidence." *Maxell*, 94 F.4th at 1372 ("Indefiniteness must be proven by clear and convincing evidence") (quoting *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017)). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *B & S Plastics, Inc. v. Custom Molded Products, Inc.*, 630 F. Supp. 3d 1225, 1231 (C.D. Cal. 2022) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

### III.   DISCUSSION

Plaintiff argues clarification of the Order (Doc. 94) is necessary because it is unclear whether the Court's ruling that the term "potential data" is indefinite extends to the term "potential ET data" of Claim 29. Plaintiff asserts that Claim 29 is a dependent claim "[l]imited

by its own language" that "provided a definite example of 'potential data.'" (Doc 99 at 8.) Plaintiff contends that "[though] the Order does not explicitly say whether claim 29 is definite," it interprets the Order as finding the term "potential ET data" definite. (*Id.* at 9.) In addition, Plaintiff argues that Claim 29 "must be separately evaluated for definiteness." (*Id.* at 6-8.)

Defendant opposes and urges the Court to deny Plaintiff's motion on both procedural and substantives grounds. (Doc. 100 at 4.) From a procedural standpoint, Defendant asserts denial is appropriate because the parties did not move for the Court to construe the term "potential ET data;" thus, the Court did not make a finding of definite or indefinite regarding '881 Patent dependent Claim 29. (*Id.*) Defendant argues the proper mechanism for remedy is filing a motion for reconsideration; however, the circumstances permitting reconsideration are not present. (*Id.* at 5-6.) In addition, Defendant argues Plaintiff's motion lacks merits because "the additional limitation in claim 29 does nothing to resolve the indefiniteness created by the term 'potential data.'" (*Id.* at 6.) In other words, "the ambiguity over the limits of 'potential data' remains relevant to the scope of claim." (*Id.*)

**A.   Motion for Clarification**

First, the Court addresses Defendant's procedural argument, which urges the Court to deny Plaintiff's motion because it is procedurally improper. (*See generally* Doc. 100 at 5-6.) Defendant asserts that Plaintiff "has not identified any part of the Court's indefiniteness holding that requires clarification" but "seeks construction of a new term" and ultimately seeks reconsideration of the Court's claim construction. (*See* Doc. 110 at 4-5.)

Contrary to Defendant's contention that notice and an opportunity to respond with briefing is warranted because neither party requested the Court to construe Claim 29 or the surrounding language "includes potential ET data," "it is not necessary for the parties to file a motion for reconsideration of a claim construction order. . .." *ASM Am., Inc. v. Genus, Inc.*, No. C-01-2190 EDL, 2003 WL 21033555 at *6 (N.D. Cal. 2003); *see also In re PersonalWeb Techs., LLC Pat. Litig.*, No. 18-CV-00767-BLF, 2019 WL 4837185 (N.D. Cal. 2019) (finding plaintiff's motion for clarification "properly submitted" and rejecting defendant's argument to "summarily deny the motion" for failure "to follow the local rules applicable to motions for reconsideration").

"Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997. "To the extent that disputes later develop over the scope of the claims -- or the constructions set forth in this order -- it may become necessary for the Court to revise its constructions, or to construe additional terms." *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2014 WL 6766018, at *2 (N.D. Cal. 2014).

Indeed, it is well-established that "a district court may (and sometimes must) revisit, alter, or supplement its claim constructions . . . to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact." *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015) (first citing *O2 Micro*, 521 F.3d at 1359); (and then citing *Pfizer,* 429 F.3d at 1377; *see also Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816, at *3 (Fed. Cir. 2021). District courts "may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Level*, 2021 WL 2914816, at *3 (quoting *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)). Thus, district courts are free to further construe or clarify claim terms when needed. *See Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (explaining that "district court[s] ha[ve] considerable latitude in determining when to resolve issues of claim construction"). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro*, 521 F.3d at 1362.

Plaintiff identified the necessity for clarification asserting that it "could contribute to either an overall resolution or to orderly further proceedings in this case." (Doc. 99 at 5.) Subsequent briefing (Docs. 100, 101) further highlighted the dispute regarding the Court's ruling that found independent term "potential data" in Claim 1 and 10 is indefinite. Defendant maintains that Plaintiff "never sought construction of "potential ET data" or the surrounding language in claim 29;" [thus,] the Court made no ruling addressing it." (Doc. 100 at 5-6.) The Court finds Plaintiff's motion properly submitted and in the interest of providing clarity considers the

11

arguments below.

**B.       Interpretation of the Court's Claim Construction Order (Doc. 94)**

Plaintiff interprets the Court's ruling of indefiniteness to apply only to "potential data" in the asserted claims of the '881 Patent (independent Claim 1 and Claim 10) and not to Claim 29, a dependent claim of the '881 Patent that describes the indefinite term "potential data" as including "potential ET data."  Plaintiff argues its interpretation is supported by the Court's rationale in finding "potential data" indefinite.  (Doc. 99 at 8.)  Plaintiff explains that "by direct application of the Court's reasoning, dependent claim 29 … does not have the boundary problem that the Court found in determining claim 1 indefinite . . ." and "[p]otential data' in claim 29 is understood by the parties, the Court, and a person of ordinary skill in the art as being limited to potential ET."  (*Id.* at 5.)   Claim 29 recites, "The system of claim 1, wherein the potential data includes potential evapotranspiration data."  The '881 Patent at 16:5-6.  The Court finds Plaintiff's interpretation argument unavailing for the following reasons (1) the record and briefing refute an overbroad assertion that Claim 29 was not considered during construction; and (2) the interpretation is highly selective and merely supported by, at the very least, internal dicta and not the Court's rationale in finding "potential data" is indefinite.

Even if the Court did not explicitly construe Claim 29, the parties' updated Joint Construction Statement (Doc. 69) stated the disputed claim term "potential data" appears in Claim 29 and reads "wherein **potential data** includes potential evapotranspiration data."  (*See* Doc. 69 at 40-41) (identifying the term "potential data" in Claims 1, 10, and 29 as disputed, Defendant's proposed construction of "indefinite," and Plaintiff's proposed construction of "data relating to the predicted, expected, or typical growth, transpiration or evaporation, such as growth models, potential evapotranspiration, leaf water") (emphasis added).)  The parties also identified "potential data" in Claims 1, 10, and **29** as a disputed term in its claim construction briefs.  (*See* Docs. 70, 73) (emphasis added).)  In addition, when arguing its proposed construction of "potential data," Plaintiff identified the term's appearance in Claims 1, 10, and 29 of the '881 Patent, and collectively referred to the term's occurrences and offered a single construction argument.  (*See* Doc. 70 at 20-21.)  Similarly, in the current pending motion, Plaintiff states the

"parties jointly asked" that "potential data' be construed in the context of independent claims 1 and 10, as well as dependent claim 29." (Doc. 99 6.)  Considering the above, and the Court's express ruling of the term "potential data" of the '881 Patent is indefinite, one cannot reasonably ascertain a select and narrow interpretation.

Moreover, to interpret the Court's indefinite ruling as applicable only to "potential data" in Claim 1 and Claim 10 completely disregards the Court's reasoning in declining to construe "potential data" as having the same meaning as "potential ET data." (Doc. 94 at 20, n. 6.) The Court stated,

> To the extent [Plaintiff's] proposed supplemental sur-sur-reply **suggests limiting "potential data" to mean only potential ET, . . . such a limiting instruction would fail for lack of claim differentiation**.  For similar reasons, [Defendant's] alleged admission . . . . is irrelevant.  [Plaintiff] argues [Defendant's] prior statements made in the *inter partes* review of the '881 Patent preclude them from now asserting an indefiniteness challenge because they stated a POSA would know that "Williams teaches deriving external data (e.g., ETc) using a model [] including potential data (e.g., ETo)."  This alleged admission does not bear on whether a POSA would understand the boundaries of "potential data" because it merely describes one example, that is already encompassed in the dependent claim.  For the reasons discussed above, **"potential data" cannot be limited only to ETo (i.e., potential ET) because of the doctrine of claim differentiation**.

(Doc. 94 at 20, n. 6) (emphasis added) (internal citations omitted).)

Likewise, Plaintiff assertion that "[t]he Court's refusal to limit independent claims to potential ET—because of the presumption of claim differentiation—necessarily finds that the dependent claim to be differentiated from is so limited.  Claim 29, so limited by its own additional language and as the Court found, is definite" is a misunderstanding and misapplication of the doctrine of claim differentiation. (Doc. 99 at 5.)  Claim differentiation refers to a principle providing, when a claim "does not contain a certain limitation and another claim [of the same patent] does, that limitation cannot be read into the former claim in determining either validity or infringement." *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc).  "The doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015).  Albeit there is a presumption that a claim is valid despite it being

1  dependent upon an invalid claim (35 U.S.C. § 282), Plaintiff's assertion is overreaching and
2  misapplies the doctrine.  The Court's underlying reasoning in declining to limit the term
3  "potential data" to mean only "potential ET data" is internal dicta, and it does not constitute a
4  finding of Claim 29 being definite.

5        Plaintiff's interpretation also disregards the Court's rationale in holding the term
6  "potential data" is indefinite.  The Court noted that "**[i]n some cases, dependent claims may**
7  **help inform the meaning of a term** that otherwise lacks a readily known definition from the
8  specification or extrinsic evidence.  **However, the inconsistencies among the dependent claims**
9  **in the '881 Patent raise more issues of ambiguity than they resolve**.  Because the intrinsic
10 **evidence lacks a general guideline or sufficient examples of what "potential data" includes**
11 **beyond potential ET, and because [Plaintiff] has not shown any extrinsic evidence clarifying**
12 **"potential data"** . . . **the Court finds a POSA would not understand the objective boundaries**
13 **of the term with reasonable certainty**.  (Doc. 94 at 22) (emphasis added).)  The Court
14 specifically stated that the inconsistencies among the dependent claims of the '881 Patent create
15 more ambiguity to the term's meaning and even with the "sufficient example" of "potential ET
16 data," the ambiguity still exists.  Thus, the dependent claims do no clarify and do not resolve the
17 objective boundaries of the term with reasonable certainty.  Considering the above, Plaintiff's
18 interpretation borders on cherry-picking, and the Court declines to adopt such an interpretation.[4]

19 **C.   Claim-by-claim Analysis**

20       On the other hand, the Court agrees that Claim 29 requires a separate evaluation for
21 indefiniteness.  (*See* Doc. 99 at 6.)  As both parties concede, neither party asked the Court to
22 construe Claim 29 or evaluate the claim for indefiniteness.  (*See generally* Docs. 99,100.)   Thus,
23 the Order does not contain a ruling regarding the claim.  The Court is required claim-by-claim
24 analysis rather than to merely extend its indefinite ruling to Claim 29.

25       The Federal Circuit emphasizes that "[e]ach claim of a patent (whether in independent,
26 dependent, or multiple dependent form) shall be presumed valid independently of the validity of

---

[4] Plaintiff's interpretation also undermines its argument for a separate evaluation of Claim 29 because it implies that a claim-by-claim assessment is not necessary and the Court's construction of the independent Claims 1 and 10 is sufficient to infer the definiteness of dependent Claim 29.  (*See* Doc. 99 at 6.)

other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1355–56 (Fed. Cir. 2001). It is "black letter law that a finding of invalidity of an independent claim does not determine the validity of claims that depend from it." *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1383 (Fed. Cir. 2008). "District courts have been chastised for invalidating swaths of claims without engaging in this kind of claim-by-claim analysis." *Gamevice, Inc. v. Nintendo Co., Ltd.*, 677 F. Supp. 3d 1069, 1072 (N.D. Cal. 2023) (citing *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380 (Fed. Cir. 2002) ("[T]he district court found claims 1–3 and 6–8 of the '984 patent invalid without explicitly addressing and analyzing each claim, apparently addressing only independent claim 1. The district court erred by not separately addressing each claim, and on remand should do so."); *Dana Corp. v. Am. Axle & M'g., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) ("Such an independent evaluation is necessary because dependent claims necessarily add limitations to the claims from which they depend and may therefore not be subject to the same asserted grounds of invalidity.")). For these reasons, the Court proceeds to construe Claim 29 for definiteness and clarify the scope of its indefinite ruling. *See Cytologix Corp*, 424 F.3d at 1172.

**D.     Claim Construction**

Plaintiff argues that dependent claim 29 adds defining clarity to the indefinite term and "undisputedly 'limits the 'potential data' of claim 1 to' *one acknowledged definition*" thus it is "plainly definite." (Doc. 99 at 10-11) (emphasis in the original).)

1. <u>35 U.S.C. § 112: Dependent Claim</u>

Under 35 U.S.C Section 112, a dependent claim "shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed" and "shall be construed to incorporate by reference all the limitations of the claim to which it refers." The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. Thus, a quick review of the Court's construction of the term "potential data" is necessary. (*See* Doc. 94.)

a.  Claim Construction: "Potential Data" in Claim 1 and Claim 10

Plaintiff proposed the following construction for the term "potential data:" "data relating to the predicted, expected, or typical growth, transpiration or evaporation, such as growth models, potential evapotranspiration, leaf water." (*See* Doc. 70.)  In construing "potential data," the Court narrowed its analysis to evaluate "whether potential data refers to a reasonably certain category of data that includes, but is not limited to, potential ET, but does not merely overlap with the definition of 'external data.'"  (Doc. 94 at 20.)  In distinguishing "external data" from "potential data," the Court stated, "potential data' must refer to a broader category of data than simply potential ET, because dependent Claim 29 separately claims potential ET."  (*Id.* at 20.)  However, Plaintiff's proposed construction "treated the types of data differently."  (*Id.*)  The Court stated,

> In addition to potential ET and leaf water potential, its proposed construction includes growth models and crop coefficients.  The dependent claims of the '881 Patent treat these types of data differently.  Crop growth model appears in a dependent claim explaining what "external data" includes.  (Doc. 70-3 at 17-18, Claims 16, 37.)  Crop coefficients appear in a claim describing what a "model" includes.  (*Id.*, Claim 32.)  Potential ET appears in a claim describing what "potential data" includes.  (*Id.*, Claim 29.)

(Doc. 94 at 21.)

The Court's rationale highlighted the inconsistencies among the dependent claims explaining that "claim 1 indicates that a 'model' (i.e., crop coefficients') differs from the 'potential data' (i.e., potential ET)," but "[t]he patent's distinction among the dependent claims that define types of external data, potential data, and models creates a discrepancy among the examples that [Plaintiff] proposes as all representing 'potential data."  (*Id.*)  The Court concluded that "the inconsistencies among the dependent claims in the '881 Patent raise more issues of ambiguity than they resolve" and found the term "potential data" indefinite because (1) "the intrinsic evidence lacks a general guideline or sufficient examples of what 'potential data' includes beyond potential ET," and (2) Plaintiff failed to "show[] any extrinsic evidence clarifying 'potential data' as a term of art."  (*Id.* at 22.)  Therefore, "a POSA would not understand the objective boundaries of the term with reasonable certainty."  (*Id.*)

16

### E. Claim Construction: Dependent Claim 29

"In this context, as in other legal-interpretation settings, later text must be read along with earlier text to discern the meaning." *Maxell*, 94 F.4th at 1373. "[A]ny particular claim language must be 'read in the context of the full claim," (*Id.* (quoting *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 422 (2023)) and "all limitations of a claim must be considered" (*Maxell*, 94 F.4th at 1373). Accordingly, the Court incorporates the above rationale and finds the additional limitation "potential ET data" does not cure the ambiguities surrounding the indefinite term "potential data" because dependent Claim 29 "do[es] not add any meaningful limitations" and "do[es] not cure" the indefiniteness of the term "potential data." *see SAP Am., Inc. v. Arunachalam*, No. 13-CV-01248-PJH, 2019 WL 1455323, at *4 (N.D. Cal. 2019), *aff'd sub nom. Arunachalam v. Presidio Bank*, 801 Fed. Appx. 750 (Fed. Cir. 2020) (unpublished) ("independent claims 19 and 27 describe a 'method for enabling object routing' or '[a]n object router'" and the "specification relating to object routing lacked enablement" thus "claims 19 and 27 do not cure that defect. **The remaining claims** [, dependent claim,] **depend on, without curing, claims 19 and 27**") (emphasis added); *Cf. Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, No. 8:12-CV-1324-ODW, 2013 WL 3946579, at *9 (C.D. Cal. 2013), *aff'd*, 758 F.3d 1344 (Fed. Cir. 2014) (finding the dependent claims "do not add any meaningful limitations-they are just trivial ones as explained in the specification")). Moreover, the inconsistencies amongst the dependent claims still exist. *See TVnGO, Ltd..*, 861 F. App'x at 457-60 (holding claim terms indefinite in part because the dependent claim terms used "the disputed phrase in a way that contradicts the independent claims").

As Defendant explained in its Opposition (Doc. 100), the term "potential data" is found in each of the independent claims of the '881 patent, and

> Every asserted claim of the '881 patent depends from either claim 1 or claim 10, and thus requires as an element "external data" that is "derived, at least in part, using a model including potential data. . . . Thus, to determine whether a system falls within the scope of claim 29, a POSA would first need to determine whether the system received "external data derived . . . using a model including potential data," and only then, assess whether that potential data "includes potential evapotranspiration data.

(Doc. 100 at 4-5.)

17

1    The Court agrees that the "ambiguity over the limits of 'potential data' remains relevant to
2    the scope of claim 29 regardless of whether the term 'potential [ET] data' standing alone has
3    reasonably certain boundaries." (*Id.* at 6.) Although the Williams Paper, incorporated in the
4    specification, describes "potential ET data" as "one variable used in irrigation calculations," the
5    "disclosure provides no guidance on whether 'potential data' would encompass only the potential
6    ET value obtained from the weather station or the underlying data used to calculate that value."
7    (Doc. 73 at 13.)

8    In response to Plaintiff's assertion that parties' agreed that a POSA would know the
9    meaning of "potential ET data", the Court reiterates that prior statements of an alleged admission
10   that a "POSA would know that 'Williams teaches deriving external data . . . using a model []
11   including potential data . . . does not bear on whether a POSA would understand the boundaries
12   of 'potential data' because it merely describes one example" and "do not weigh on whether a
13   person skilled in the art would understand the boundaries to reasonable certainty. (*See* Doc. 94 at
14   20, n. 6.)

15   In addition, the Court notes that the term "potential ET data" has its own ambiguity as
16   well. In arguing its proposed construction of "potential data" (Doc. 73), Defendant asserted that
17   "[e]ven within the context of the term 'potential evapotranspiration,' . . . there was ambiguity
18   over the meaning of 'potential,' which "could refer to a number of different values calculated
19   using different formulas and inputs." (Doc. 73 at n. 2.)

> For example, "potential evapotranspiration" had been used to refer to three different definitions, including "(1) the very maximum rate of ET that can be transferred to the atmosphere from a wet surface; (2) a reference evapotranspiration rate calculated using climatic data that reflects the expected evapotranspiration from a hypothetical 'reference' crop under ideal conditions . . . or (3) the maximum evapotranspiration rate for a specific crop, under ideal conditions, accounting for factors such as plant density, leaf area, and growth stage of the crop

25   (*Id.*) Thus, "even if a POSA were to read potential data" to mean 'potential [ET] data,' there
26   would still be no clear guidance on what data would be included," and "ambiguity as to whether
27   "potential [ET] data" referred just to the "calculated values for potential evapotranspiration" or to
28   "any of the inputs into the equations used to calculate" the various "potential evapotranspiration"

18

values. (*Id.*)  The Court's Order also emphasized the ambiguity deriving from Plaintiff's inconsistent use and meanings of the term. (*See* Doc. 94 at 21-22.)

For all these reasons, and the reasons explicitly expressed in the Court's claim construction Order (Doc. 94 at 17-22), the Court finds dependent Claim 29 is indefinite.

## IV.  CONCLUSION

The Court declines to adopt Plaintiff's selective interpretation of the claim construction order (Doc. 94) but finds clarification appropriate because parties did not request the Court to construe dependent Claim 29 of the '881 Patent, and dispute whether the Court's ruling extends to the dependent claim which incorporates the indefinite term by describing "potential data" as "includ[ing] potential evapotranspiration data."  In accordance with precedent, the Court **GRANTS** clarification to further construe dependent Claim 29: "The system of claim 1, wherein the potential data includes potential evapotranspiration data" and clarify the scope of its indefinite ruling that construed the term "potential data" in the asserted claims of the '881 Patent (independent Claims 1 and 10) as indefinite.

In accordance with the rules set forth by the Federal Circuit for claim construction, the Court evaluated dependent Claim 29 for definiteness and finds the claim does not add any meaningful limitation or illuminate the meaning of the indefinite independent term "potential data" or cure the ambiguity surrounding the scope and boundaries of the term "potential data." Claim 29 merely depends without curing the defect, and "a POSA [still] would not understand the objective boundaries of the term with reasonable certainty." (Doc. 94 at 22.)  Accordingly, the Court finds Claim 29 of the '881 Patent is **INDEFINITE**.

IT IS SO ORDERED.

Dated:     **May 7, 2024**                                                  _____
UNITED STATES DISTRICT JUDGE

19