# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINEYARD INVESTIGATIONS, | Case No. 1:19-cv-01482-JLT-SKO |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO COMPEL** |
| v. | (filed under seal) |
| E. & J. GALLO WINERY, | |
| Defendant | (Doc. 123, Doc. 127) |

## I. INTRODUCTION

On May 3, 2024, Plaintiff Vineyard Investigations ("Plaintiff") filed a Motion to Compel Supplemental Document Production and Interrogatory Responses from Defendant E. & J. Gallo Winery ("Defendant"). (Doc. 123). Much of the parties' Joint Statement re Discovery Disagreement discussed Plaintiff's Motion for Clarification (Doc. 99), which was pending before District Judge Jennifer L. Thurston at the time the parties filed their joint statement.

On May 7, 2024, Judge Thurston filed an order (Doc. 124) regarding the Motion for Clarification. This Court then ordered the parties to meet and confer to file an amended Rule 251 statement regarding what remained of their dispute in light of the order. (*See* Doc. 126). The parties filed their "Joint Statement re Discovery Disagreement" (the "joint statement") on May 22, 2024. (Doc. 127). Having considered the Motion, joint statement, and supporting exhibits, and for the

reasons set forth below, the motion is DENIED.

## II.   BACKGROUND

**A.   Factual Background**

Dr. Paul Skinner, a soil scientist, grape grower, and viticulturist, founded Plaintiff Vineyard Investigations (formerly known as Terra Spase, Inc.) in 1988. (Doc. 52 at 4). Plaintiff focuses its consulting on "data collection, analysis, and interpretation for developing and improving vineyard management practices." (*Id.*). Plaintiff owns a portfolio of patent and patent applications based on Dr. Skinner's inventions related to the automated monitoring and maintenance of growing crops. (*Id.* at 8). The inventions improve vineyard management practices in the wine industry. (*Id.*). Plaintiff claims Defendant allegedly infringes on the asserted patents by using Plaintiff's Variable Rate Drip Irrigation ("VRDI") systems and its "systems for using remotely sensed (e.g., satellite) data in the modeling, scheduling, and control of irrigation." (Doc. 52 at 2).

Plaintiff filed its First Amended Complaint (the "FAC") (Doc. 52) on October 22, 2021,[1] and Defendant filed its Answer (Doc. 54) on November 12, 2021. In its complaint, Plaintiff alleges Defendant is infringing on inventions protected by three of its patents. The three asserted patents are U.S. Patent No. 6,947,810 (the "'810 Patent"), U.S. Patent No. 8,528,834 (the "'834 Patent"), and U.S. Patent No. 10,645,881 (the "'881 Patent"). These patents derive from, and share patent specification disclosures with, parent U.S. Patent No. 6,874,707, which was filed on May 31, 2001, and was issued by the U.S. Patent and Trademark office on April 5, 2005. Plaintiff concedes that for the purposes of this motion, the '881 patent is irrelevant.[2] Pursuant to the FAC, the patents can be described as follows:

---

[1] Plaintiff filed its initial complaint on October 19, 2019. On October 20, 2021, the Court granted Plaintiff's Motion for Leave to Amend, which added a claim alleging infringement on a third patent, the '881 patent. (Doc. 51).

[2] Pursuant to the Court's Scheduling Order (Doc. 41) and N.D Cal. Patent Rule 4-3, the parties submitted a joint claim construction and prehearing statement on April 25, 2022. (Doc. 78). The Court issued an order construing claims on July 7, 2023. (Doc. 94). Plaintiff filed a Motion for Clarification on August 7, 2023, seeking clarification on Claim 29 of the '881 patent. (Doc. 99, 100, 102). On May 7, 2024, the Court issued its order on Plaintiff's Motion for Clarification. (Doc. 124). Based on this order, Plaintiff concedes the '881 patent is irrelevant to the discovery dispute at hand. Plaintiff states it intends to confer with Defendant about a Motion to Sever and enter judgment on the '881 patent, which would permit an appeal separate from this case. Plaintiff states "[a]s purely technical matter, the patent remains asserted and part of this case until that occurs, but Vineyard Investigations does not wish to occupy the Court with further discovery-related or substantive motions about it." (Doc. 127-1 at 5).

2

> **The '834 Patent**: The '834 Patent describes and claims a "system for monitoring and managing plant growth" in which: "Combinations of data from sensors local to a vineyard, and from optional remote stations and sensors, is combined with a control system to accurately control the dispensing of water and chemicals such as insecticides, disease prevention fungicides and fertilizers." While the innovative systems of the patent could be advantageously applied to many different crops, some applications of the system are particularly adapted to improve the growing of grapevines in a vineyard. The systems and methods disclosed and claimed in the '834 patent provide significant advantages in such an environment, where smart automation reduces the high cost of vine growth management, and where soil and vine growth variability need to be addressed to improve yield and fruit quality.
>
> The inventions of the '834 Patent presented an important advance from existing vineyard drip irrigation systems at the time, which were manually controlled or were automated in simplistic ways with a timer or computer. Such systems did not "provide a high level of automation" like the systems of the patented invention, and did not address soil variability problems by "selectively provid[ing] different amounts of water to different plants" or plant areas. In addition, the invented system provided new and unconventional ways to automatically integrate "sophisticated information" about plant sizes, weather conditions and forecasts, and soil conditions—which previously had only been used in the growing process, if at all, via "human intervention" that was "prone to errors and inefficiencies." Dr. Skinner's patented innovations advanced the field and solved these and other problems in the prior art—including through his use of real-time sensor and external data, processed according to various agricultural models, as control inputs to a variable rate irrigation system.
>
> **The '810 Patent**: The '810 Patent describes and claims inventions related to the overall system described above and includes specific claims relating to use of in-field sensors providing inputs to the smart automated control system. These in-field sensors can be attached to the conduit providing water and/or other nutrients. They can also be placed at other locations in the vineyard, such as for soil nutrient and moisture monitoring sensors that may need ground contact. The patent also discloses that the control for the system can be centralized or distributed, and that control can be associated with individuals or groups of sensors and emitters in order to assess and respond to variability in the vineyard.
>
> The inventions claimed in the '810 Patent improved on the prior art and provided the same benefits as discussed above with respect to the '834 Patent. Individually and together, the claimed inventions provide new and unconventional techniques for intelligent monitoring and management of crops such as grapevines—and do so by enabling the system to variably and "accurately control the dispensing of water" and other chemicals and nutrients.

(Doc. 52 at 9-12) (internal citations omitted).

On August 2, 2021, Plaintiff served its Preliminary Infringement Contentions ("PICs" or "infringement contentions") on Defendant. In its PICs, Plaintiff specifically accuse three VRDI systems of infringing on the '810 and '834 patents: (1) the IBM VRDI system implemented at

Colony Ranch; (2) the Netafim system implemented at Livingston Ranch, Ripperdan, Dusty Lane, and Barelli Creek; and (3) the Waterbit system implemented at Borden Hills and Valley Oak. (Docs. 127-11, 127-12, 127-13, 127-14). Plaintiff also notes throughout its PICs that it "has not completed its investigation of the facts in this case . . . . As a result, these contentions are necessarily (and by [Defendant's] own conduct) limited to being primarily based on publicly available information that [Plaintiff] has researched and collected." (Doc. 127-12). Plaintiff also alleges the following:

> On information and belief, [Defendant] has installed other systems that meet the definition of "Variable Rate Irrigation" as given in these contentions, including because they are controllable at the level of sub-blocks, rows, groupings of vines, or individual vines. Gallo has improperly objected to and limited, and failed to provide discovery commensurate with, Vineyard Investigations' requests—preventing Vineyard Investigations from detailing the full scope of Gallo's infringement herein. Vineyard Investigations reserves all rights to add additional Accused Vineyards to its contentions and infringement allegations as they are revealed during discovery, which has barely begun.

(Doc. 127-15 at 12). Plaintiff defines "Variable Rate Irrigation" as "irrigation that is operated or controlled to vary the amount of water or other materials delivered to plants, such that for example, different 'zones,' 'pixels,' sub-blocks, rows, groupings of vines, or individual vines within a vineyard that may selectively receive different amounts of water or other materials in a time period." (Doc. 127-11 at 4).

Plaintiff served its first set of requests for production and interrogatories on May 18, 2021. Defendant responded with objections on July 1, 2021, and thereafter amended its response to Interrogatory No. 1 on July 27, 2021. Defendant provided supplemental responses to Interrogatory Nos. 6-9 on December 22, 2023, and to Nos. 2-4 on January 26, 2024. Plaintiff served its second set of requests for production and interrogatories on March 6, 2023. Defendant objected and did not respond or produce new documents, on April 5, 2023. Defendant responded to Interrogatory Nos. 10-18, with respect to 10 vineyards, on January 26, 2024.

Plaintiff is seeking to compel Defendant to supplement its responses to the requests for production and interrogatories because they only include information related to the specific vineyards Plaintiff identified in its infringement contentions. Plaintiff states it has a "reasonable basis to contend" Defendant's other vineyards operate "Variable Rate Irrigation" technologies and

4

subsequently infringe on Plaintiff's patents. (Doc. 127-1 at 6). Plaintiff describes its request as "categorical" and not limited to particular interrogatory or request numbers.

### III. DISCUSSION

This dispute centers on whether Defendant's discovery obligations are limited to the 10 "experimental" vineyards using the three specific VRDI systems that Plaintiff identified in its PICs (namely, the IBM VRDI system, the Netafim system, and the Waterbit system), or whether Defendant is required to provide discovery on an additional 200,000 of acres of vineyards which Plaintiff alleges may be using unidentified, but nonetheless infringing, irrigation systems. As discussed below, Plaintiff's broad request requires further specificity. Plaintiff is limited to the allegedly infringing systems identified in its PICs, and its Motion to Compel (Doc. 127) is DENIED.

**A.   Legal Standard**

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when "a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.' " *Hunt v. Cty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)). Rule 37 authorizes a court to sanction parties for failing to attend their own depositions. *See* Fed. R. Civ. P. 37(d)(1)(A)(i). The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

5

> relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

**B.     Analysis**

In the Scheduling Order (Doc. 41), the Court adopted the Local Patent Rules for the Northern District of California. "The overriding principle of the [Patent Local Rules for the Northern District of California] is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D. Cal. Nov. 26, 2003). The Rules require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). The rules require the party claiming patent infringement to serve a "Disclosure of Asserted Claims and Infringement Contentions" that contains "[s]eparately for each asserted claim, each accused . . . instrumentality ('Accused Instrumentality') . . . of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known." Patent L.R. 3-1(b). The rules "place the burden of specifically identifying all accused devices on the plaintiff." *Infineon Technologies AG v. Volterra Semiconductor Corp.*, 2012 WL 6184394, at *3 (N.D. Cal. Dec.11, 2012). "It does 'not tolerate broad categorical identifications' or 'the use of mere representative examples.'" *Infineon Technologies, AG*, 2012 WL 6184394, at *3 (quoting Ora*cle America v. Google Inc.*, 2011 WL 4479305, at *2 (N.D. Cal. Sep. 26, 2011)).

Defendant argues that Plaintiff's discovery is limited to the vineyards incorporating the

6

three accused VRDI systems (the IBM system, the Netafim system, and the Waterbit system) because those are the only allegedly infringing VRDI systems named in the PICs. Plaintiff counters that Defendant's discovery obligations are not limited to the vineyards using the systems named in the PICs, but rather, any system that Defendant identifies as using a type of "Variable Rate Irrigation" as defined in the PICs.

Plaintiff has identified only three "accused devices" (in this case, the three VRDI systems), and therefore, Plaintiff is only entitled to discovery related to those VRDI systems. *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR JSC, 2013 WL 588760, at *1 (N.D. Cal. Feb. 13, 2013) ("In other words, even if [Plaintiff] did not identify a [Defendant] product by name in its PICs, it demands that [Defendant] produce discovery as to that unnamed product if [Defendant] determines that the product contains one of the above-identified features. The Court is unpersuaded that [Plaintiff] is entitled to such broad discovery" because Plaintiff had failed to previously identify the products.). Plaintiff carries the burden to identify accused devices (*Infineon Technologies AG*, 2012 WL 6184394, at *3), and "defendants should not have to guess" at which of its technologies are encompassed by a Plaintiff's PICs. *Kelora Systems, LLC v. Target Corp.*, 2011 WL 5444419, at *2 (N.D. Cal. Nov. 9, 2011). By requiring Defendant to identify which of its vineyards are employing "Variable Rate Irrigation" systems that allegedly infringe upon Plaintiff's patents, Plaintiff's broad request has impermissibly shifted its burden to Defendant. *Id.*

Patent Rule 3-1 requires "specific identification of particular accused products," and does not "tolerate broad categorical identifications . . . nor . . . the use of mere representative examples." *Oracle Am., Inc. v. Google Inc*. 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011). Plaintiff's request for discovery related to "Variable Rate Irrigation," which is defined as "irrigation that is operated or controlled to vary the amount of water or other materials delivered to plants, such that for example, different 'zones,' 'pixels,' sub-blocks, rows, groupings of vines, or individual vines within a vineyard that may selectively receive different amounts of water or other materials in a time period," (Doc. 127-11 at 4) is the type of "broad categorical identification" prohibited by the Rules. *See Oracle Am., Inc. v. Google Inc*. 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011). *Oracle* is instructive.

7

In *Oracle*, Plaintiff accused the following Google devices as instrumentalities of patent infringement:

> (i) "Android" or "the Android Platform"; (ii) Google devices running Android; and (iii) other mobile devices running Android. Representative examples of Google devices running Android include the Google Dev Phones, the Google Nexus One, and the Google Nexus S. Representative examples of other mobile devices running Android include HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate" as instrumentalities of patent infringement.

*Id.* at 1. Plaintiff later named other mobile devices, such as the LG Optimus, the HTC Droid Incredible 2, and the Motorola Atrix, as products infringing on Plaintiff's patents, because they also ran Android or the Android platform. *Id*. The Court found that the infringement contentions had not specifically identified these the HTC Droid Incredible 2 and the Motorola Atrix, and therefore, Plaintiff could not accuse them of infringement because "mobile devices running Android," was too broad a categorial identification to adequately support infringement contentions. *Id.*

In the instant case, Plaintiff's categorization of "Variable Rate Irrigation" systems suffers a similar fate, as "Variable Rate Irrigation" is even more broad than the categorization in *Oracle*. In *Oracle*, Plaintiff's identified the exact infringing system but failed to identify all the devices running the system. Here, Plaintiff has not even identified the infringing *systems* (like the Android system in *Oracle* or the IBM system in this case), let alone the infringing devices (like the specific mobile devices in *Oracle* or the vineyards in this case), in its PICs. For instance, the '834 Patent describes and claims a "system for monitoring and managing plant growth in which [c]ombinations of data from sensors local to a vineyard, and from optional remote stations and sensors, is combined with a control system to accurately control the dispensing of water and chemicals such as insecticides, disease prevention fungicides and fertilizers." A "Variable Rate Irrigation" system, as defined by the PICs and the interrogatories, includes any system of "irrigation that is operated or controlled to vary the amount of water or other materials delivered to plants, such that for example, different 'zones,' 'pixels,' sub-blocks, rows, groupings of vines, or individual vines within a vineyard that may selectively receive different amounts of water or other materials in a time period." (Doc. 127-11 at 4). Under Plaintiff's definition of "Variable Rate Irrigation," and tracking *Oracle*, by seeking discovery related to all Variable Rate Irrigation systems, Plaintiff's

1 categorization of the discovery it seeks is akin to Oracle seeking discovery related to "mobile phones"—a categorization that is even less specific than the identification of "mobile devices running Android," which the Court found was too vague identify the allegedly infringing products in Plaintiff's infringement contentions.

There are instances, however, where plaintiffs may be entitled to discovery related to allegedly infringing devices that are not named in its PICs. Namely, a Plaintiff may be entitled to discovery "if the plaintiff does not know of the allegedly infringing product when it serves its infringement contentions and could not have discovered the product absent discovery." *Infineon Technologies, AG*, 2012 WL 6184394, at *3. "In such circumstances, the plaintiff nevertheless must 'articulate how the [unknown] accused products share the same, or substantially the same, infringing [structure]' with a named product." *Id.* (quoting *Bender v. Freescale Semiconductor, Inc.*, No. 09–1156 PHJ (MEJ), 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010); *see, e.g., Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) (considering devices "reasonably similar" because they were structurally identical and operated in a manner consistent with Plaintiff's infringement theory).

Plaintiff relies on *Panavision Imaging, LLC v. OmniVision Technologies*, No. CV-09-1577 DMG (CTx), 2010 WL 11507883, at *4 (C.D. Cal. June 7, 2010) to support its proposition that this Court should grant Plaintiff's motion to compel in this case because the information it seeks to discover is publicly unavailable.[3] This case is inapposite. In *Panavision Imaging*, Plaintiff identified various products it alleged were infringing on their patents in its PICs. *Panavision*, 2010 WL 11507883, at *4. The plaintiff in *Panavision* had only confirmed (via reverse engineering) that *some* of the products in its PICs actually included the patented technology. *Id.* Those plaintiffs, however, included expert testimony that the other products were likely constructed in the same manner as the infringing products. *Id.* Because the Plaintiff's investigation provided a "reasonable inference that the accused products" infringed, Plaintiff's PICs were sufficient. *Id.*

Here, Plaintiff has failed to articulate how the unknown accused products share the same,

---

[3] Plaintiff also cites to a litany of cases to argue it can use discovery to identify other relevant vineyards, but none are patent cases governed by the Local Patent Rules.

1    or substantially the same, infringing structure as the named VRDI systems, nor has Plaintiff
2    provided a "reasonable inference" that all VDRI systems infringe on Plaintiff's patents.  For
3    example, in its complaint, Plaintiff alleges the VRDI system using Netafim components as a system
4    "[embodied] the claimed systems and [performed] the claimed methods when used as intended
5    (*e.g.*, to variably irrigate grapevines with associated emitters in response to data or signals from in-
6    field sensors associated with grapevines).  The installation is described in Knipper, et al., 'Using
7    High-Spatiotemporal Thermal Satellite ET Retrievals for Operational Water Use and Stress
8    Monitoring in a California Vineyard' ('Operational Water Use'), Remote Sensing (2019), Vol 11,
9    2124."  (Ex. 5 at 1).  Plaintiff also alleges the VRDI system using WaterBit components and
10   technology "[embodied] the claimed systems and [performed] the claimed methods when used as
11   intended (*e.g.*, to variably irrigate grapevines with associated emitters in response to data or signals
12   from in-field sensors associated with grapevines)."  (Ex. 5 at 2).  Plaintiff's interrogatories,
13   however,  seek discovery on a much broader set of technologies, and the VDRI systems it describes
14   are not limited to systems that vary the amount of water or other materials they deliver *in response*
15   *to data or signals from in-field sensors*. At most, Plaintiff's descriptions of Variable Rate Irrigation
16   systems are the kind of broad categorical identifications prohibited by the Patent Rules.  *Oracle*
17   *Am., Inc. v. Google Inc*. 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011).

18           Plaintiff has failed to provide a "reasonable basis" to demonstrate that *any* VDRI system
19   necessarily infringes upon its patents, which generally vary the amount of water or other materials
20   they deliver *in response to data or signals from in-field sensors*.  Accordingly, Plaintiff's motion
21   to compel must be denied.  *Samsung SDI Co., Ltd. v. Matsushita Electrical Indus. Co., Ltd.*, VC
22   05-8493 AG (SHx), 2007 WL 4302701, at *3 (C.D. Cal. June 27, 2007) (denying the defendants'
23   discovery where defendants did not establish a reasonable basis to suspect that additional products
24   infringed the patents-in-issue); *Monolithic Power Systems v. Silergy Corporation*, No. 14-cv-
25   01745-VC (KAW), 2015 WL 5948159 (N.D. Cal. Oct. 14, 2015) ("Absent a clear explanation of
26   the technology at issue, *and the relation to the patents-in-suit*, the Court declines to order Defendant
27   to supplement its responses to include unaccused products.") (emphasis added).

28           Plaintiff may reduce the scope of these broad categorical identifications by identifying the

infringing features the unnamed systems share with the systems named in its PICs. *Monolithic Power Systems*, 2015 WL 5948159, at *2 ("If, however, Plaintiff's representation that information regarding Defendant's products are not publicly available and cannot be easily obtained is accurate, and Plaintiff articulates how the technology concerns the patents-in-suit and the alleged infringement, the court is prepared to order Defendants to provide discovery on similar, unaccused products."); *see also Seoul Semiconductor Co. v. Feit Electric Co*, No.: CV 22-05097-AB (SHKx), 20023 WL 8242156, at *3 (C.D. Cal. July 18, 2023) ("Plaintiffs must, at a minimum, identify shared infringing features between the charted and uncharted products.") (citing *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 5:14-cv-03227-PSG, 2015 WL 846679, at *1 (N.D. Cal. Feb. 25, 2015); *Aavid Thermalloy v. Cooler Master Co.*, No.17-cv-05363-JSW, 2018 WL 11348437 (N.D. Cal. July 18, 2018) (allowing discovery into unnamed products where the discovery requests are limited to products that conform to the same *infringing* design as the accused products); *see also Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*, No. C 08-986 SI, 2009 WL 1834147, 2009 U.S. Dist. LEXIS 53942 (N.D. Cal. June 24, 2009) (finding that failure to specifically accuse products is not dispositive where defendant had notice that plaintiff accused "what is purportedly the same process in a different product.")[4]  Plaintiff is cautioned, however, that it may not rely on conclusory assertions that other infringing products exist. *Mediatek*, 2013 WL 588760, at *4 ("[T]he Rules do not require the party alleging infringement to perform the impossible. There may be circumstances where publicly available information does not disclose a potentially infringing product and therefore some directed, proportional discovery may be appropriate, *but only upon a showing of a reasonable belief that such additional products actually exist and that they cannot be discovered with publicly available information*.") (emphasis added).

---

[4] Relatedly, Plaintiff suggests that it can now name additional vineyards using allegedly infringing technology. (Ex. 2 at 1-2). In its letters to Defendant, Plaintiff identifies these technologies with a greater specificity than it does in its interrogatories and requests for production by connecting an irrigation system to specific data signals and in-field sensors. ("Gallo admittedly measures variability and computes irrigation schedules for this vineyard at a fine granularity, and installs multiple soil moisture and flow sensors per block."). Similar specificity may be sufficient to narrow the scope of its interrogatories and requests for production, as this description is narrower than its current definition of Variable Rate Irrigation technology.

# IV. CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff Vineyard Investigations Motion to Compel Supplemental Document Production and Interrogatory Responses from Defendant E. & J. Gallo Winery ("Defendant"). (Doc. 123, Doc. 127).

IT IS SO ORDERED.

Dated:  **July 24, 2024**              /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE