**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINEYARD INVESTIGATIONS,<br><br>   Plaintiff,<br><br>   v.<br><br>E. & J. GALLO WINERY,<br><br>   Defendant. | Case No. 1:19-cv-01482-JLT-SKO<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY VINEYARD INVESTIGATIONS' EXPERT DR. MARK GREENSPAN**<br><br>(Docs. 135 & 137) |

## I.   INTRODUCTION

On October 11, 2024, Defendant E. & J. Gallo Winery ("Defendant") filed a "Motion to Disqualify Vineyard Investigations ["Plaintiff"]'s Expert Dr. Mark Greenspan" ("Motion to Disqualify"). (Doc. 135). The parties submitted their "Joint Statement Re: [Defendant's] Motion to Disqualify [Plaintiff's] Expert Dr. Mark Greenspan" (the "Joint Statement") pursuant to this Court's Local Rule 251 on November 13, 2024. (*See* Docs. 137, 149).[1] On November 21, 2024, the Court ordered the matter submitted pursuant to E.D. Local Rule 230(g). Having considered the Motion, Joint Statement, and supporting exhibits, and for the reasons set forth below, the Court DENIES the Motion to Disqualify.

## II.   BACKGROUND

### A. Procedural Posture

Plaintiff initiated this action in October 2019, asserting that Defendant infringed two patents (the "'834 and '810 patents") through its use of certain variable rate drip irrigation ("VRDI") systems.[2] (Doc. 1.)

A scheduling conference was held in this case in May 2021. (Doc. 40.) Following the conference, the Court issued a Scheduling Order that set deadlines for, among other things, the

---

[1] The unredacted Joint Statement is filed under seal; the redacted version was filed on the docket on November 27, 2024. (Doc. 149, *see also* Doc. 148)

[2] Plaintiff later amended its complaint to assert a third patent ("the '881 patent") in October 2021 (Doc. 52), but that patent was subsequently construed to be indefinite (*see* Docs. 94 & 124) and is not relevant to the present motions.

1  deadline to exchange the parties' respective experts.  (Doc. 41.)  The Court then entered several
2  orders modifying the case schedule (*see* Docs. 51, 93, 98, 104, 111, 131), based on an amendment
3  of the complaint (*see* Doc. 51) multiple stipulations from the parties (*see* Docs. 92, 97, 103, 110,
4  130).  Under the operative case management schedule (Doc. 131), the parties must disclose their
5  respective experts by December 13, 2024.

6        On July 19, 2021, the parties stipulated to a protective order (Doc. 42), which the Court
7  entered on July 21, 2021.  The protective order includes a provision that defines an "Expert" as:

> a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

(*Id.* at 5 ("Section 2.8").)  On September 26, 2024, Plaintiff disclosed to Defendant that it intended to use Dr. Mark Greenspan as an expert witness.  (Doc. 149 at 4.)  Dr. Greenspan worked for Defendant for nine years, between 1996 and 2005, as an irrigation specialist and Winegrowing Research and Development Manager.  (Doc. 137-3 at 2–3).  He now works as an independent consultant to wineries and winegrape growers.  (*Id.* at 2).

### III.  DISCUSSION

Defendant seeks to exclude Plaintiff's witness Dr. Greenspan because he was formerly employed by Defendant—in a role during which he had access to nonpublic information Defendant alleges is relevant to the current action—and because Dr. Greenspan is a current consultant to Defendant's competitors.  There are two relevant bases on which Defendant moves Dr. Greenspan be disqualified: (1) an exercise of a trial court's inherent discretion and (2) pursuant to Section 2.6 of the protective order (Doc. 43).

**A.  Legal Standards**

A trial court has the inherent power to disqualify expert witnesses, consistent with its broad discretion "to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system."  *Ziptronix, Inc. v. Omnivision*

*Techs., Inc.*, No. C -10-05525 SBA EDL, 2013 WL 146413, at *1 (N.D. Cal. Jan. 14, 2013); *see also Koch Ref. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (9th Cir. 1996); *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). However, "disqualification is a drastic measure that courts should use reluctantly and rarely." *United States v. Kernen Constr.*, No. 217CV01424WBSDMC, 2018 WL 5023411, at *1 (E.D. Cal. Oct. 16, 2018) (citing *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004)).

While there is no brightline rule, *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1092 (citing *Koch Ref. Co.*, 85 F.3d at 1181), courts commonly require the party seeking disqualification to bear the burden of showing that "(1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Jones v. Toft*, No. 2:11-CV-0192 MCE EFB, 2013 WL 2102972, at *2 (E.D. Cal. May 14, 2013), *report and recommendation adopted*, No. 2:11-CV-0192 MCE EFB, 2013 WL 4010315 (E.D. Cal. Aug. 5, 2013); *see also Est. of Michael Wilson by & through Jackson v. Cnty. of San Diego*, No. 320CV00457RBMDEB, 2023 WL 8313230, at *2 (S.D. Cal. Dec. 1, 2023); *Chan v. ArcSoft, Inc.*, No. 19-CV-05836-JSW, 2023 WL 5068495, at *4 (N.D. Cal. Aug. 8, 2023).

As to the first factor, the focus of the inquiry is on "whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1093. As to the second factor, "confidential information" is that which is "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Hewlett-Packard*, 330 F. Supp. 2d at 1094 (quoting *Paul By & Through Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 279 (S.D. Ohio 1988) (alteration in original)). The burden is on the party seeking disqualification to "point to specific and unambiguous disclosures [of litigation-relevant confidential information] that if revealed would prejudice the party." *Id.*

"Generally, both factors must be present for disqualification to be appropriate." *Chan*, 2023 WL 5068495 at *4. Additionally, courts take into account "whether disqualification would be fair to the affected party and would promote the integrity of the legal process." *Id.* (quoting *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1093).

3

Independent of the court's broad discretion to disqualify an expert, courts have also disqualified experts based on a determination that a protective order precludes the sharing of confidential information necessary for the formulation of an expert opinion with a parties' proposed expert. *See, e.g.*, *GPNE Corp. v. Apple Inc.*, No. 512CV2885LHKPSG, 2014 WL 1027948, at *1 (N.D. Cal. Mar. 13, 2014); *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC JSC, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012).

**B. Analysis**

    **a.** *The Court declines to exercise its discretion to disqualify Dr. Greenspan[3]*

As to the first factor, the Plaintiff's primary argument is that Defendant has not carried its burden to establish a confidential relationship between Defendant and Dr. Greenspan because Defendant has not produced an original copy of any confidentiality agreement Defendant claims Dr. Greenspan "would have signed" upon his employ. (Doc. 149 at 19, *see also id.* at 11). But Plaintiff also acknowledges that "[i]n an abundance of caution and good, ethical practice, [Plaintiff] and its counsel have treated Dr. Greenspan as if he was under an obligation not to talk about confidential information learned at Gallo twenty years ago." *Id.* 19. In light of the Court's analysis as to the second factor, which the Court finds dispositive, the Court assumes without deciding that Dr. Greenspan's prior employment by Defendant constituted a prior confidential relationship sufficient to establish the first factor.

As to the second factor, the parties disagree as to whether the information Dr. Greenspan obtained through his prior employment by Defendant constitutes "confidential information" for the purposes of disqualification. And indeed, the parties' disagreement maps onto an existing split in the case law as to whether prior disclosures of purely *technical* information constitute "confidential information" for the purposes of the second factor. While there are cases that do not agree, *see, e.g.*, *Tabaian v. Intel Corp.*, No. 3:18-CV-00326-HZ, 2018 WL 4566257, at *5 (D. Or. Sept. 22, 2018); *Oracle Corp.*, 2012 WL 2244305, at *7; *Pellerin v. Honeywell Int'l Inc.*, No. 11CV1278-BEN CAB, 2012 WL 112539, at *2 (S.D. Cal. Jan. 12, 2012), *Space Sys./Loral v. Martin Marietta*

---

[3] In a prior order, the court declined to seal several documents *in toto*. (Doc. 148). The Court notes that its decision here would not be affected by its consideration of those additional documents.

1  *Corp.*, No. CIV. 95-20122 SW, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995), the majority
2  view is "that prior disclosure, not made in preparation for the then-pending litigation, of
3  confidential technical information to a proposed expert witness does not justify disqualifying the
4  expert, at least not when the confidential technical information is otherwise discoverable."
5  *Edwards Vacuum LLC v. Hoffman Instrumentation Supply, Inc.*, No. 3:20-CV-1681-AC, 2020 WL
6  7360682, at *7 (D. Or. Dec. 15, 2020); *see also* Nina A. Vershuta, *New Rules of War in the Battle*
7  *of the Experts Amending the Expert Witness Disqualification Test for Conflicts of Interest*, 81
8  BROOK. L. REV. 733, 747 (2016) ("Under the majority view, unless the disclosed information meets
9  this stringent standard, courts will deny a motion to disqualify an expert."). The Court adopts the
10  majority view.

11  Courts that have adopted the majority view of "confidential information" have offered
12  several rationales that the Court finds persuasive contrasting the reasons for finding a conflict of
13  interest where an expert was made privy to "discussions of the retaining party's strategies in the
14  litigation, the kinds of expert the party expected to retain, the party's views of the strengths and
15  weaknesses of each side, the role of each of the party's witnesses to be hired, [or] anticipated
16  defenses"—most often situations where a party has consulted with, but not retained an expert who
17  is then hired by an adverse party—but not where an expert had a previous confidential relationship
18  with an opposing party in which the expert was made privy to technical information. *Edwards*
19  *Vacuum LLC*, 2020 WL 7360682, at *8 (quoting *U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc.*
20  *v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 250 (D.N.J. 1997)).

21  First, technical information, unlike privileged attorney work product information, is
22  discoverable. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2006
23  WL 2845212, at *5 (N.D. Cal. Sept. 29, 2006); *accord Sarl v. Sprint Nextel Corp.*, No. 09-2269-
24  CM/DJW, 2013 WL 501783, at *6–*7 (D. Kan. Feb. 8, 2013); *Chrisjulbrian Co. v. Upper St. Rose*
25  *Fleeting Co.*, No. CIV. A. 93-1879, 1994 WL 673440, at *2 (E.D. La. Dec. 2019).

26  Second, courts have consistently considered the policy implications of the second factor,
27  and in so doing, have been primarily concerned about a rule that would "encourage[e] an attorney
28  to consult with many experts in an attempt to preclude an adversary from finding an expert."

*Edwards Vacuum LLC*, 2020 WL 7360682, at *7; *see also see Sarl*, 2013 WL 501783, at *7 ("the expert disqualification doctrine derives from legal principles surrounding attorney conflicts of interest and cases where its purpose is to protect privileges such as the attorney-client privilege"). These concerns justify disqualifying an expert where the expert has "received attorney work product or been given access to information protected by the attorney-client privilege," *Edwards Vacuum LLC*, 2020 WL 7360682, at *7 (citing *Sarl*, 2013 WL 501783, at *6–7), in order to avoid (1) "incentivizing experts to 'sell their opinions to the opposing parties or the highest bidder without concern about the potential confidentiality of their previous consultations'" or (2) "encouraging attorneys to 'create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance.'" *Id.* (quoting *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1095 (N.D. Cal. 2004)). But these policy concerns are not implicated by cases where, like here, an expert's previous confidential relationship involved disclosures of only technical information.

And while it is true that some courts have considered the policy implications of letting a former employee testify as an expert for an opposing party—in particular, that the former employee will "be unable to segregate information obtained in the context of the confidential relationship, and opinions based on that information, from information produced in discovery," *Tabaian*, 2018 WL 4566257, at *5—in the present case, this concern is mitigated by (1) the opportunity for direct and cross examination, (2) Plaintiff's assurances that they have treated Dr. Greenspan as being subject to a binding confidentiality agreement as to any non-discoverable confidential technical information, (Doc. 149 at 19), and (3) the fact that Defendant has not identified any relevant non-technical confidential information known to Dr. Greenspan that is not otherwise discoverable. *See Edwards Vacuum LLC*, 2020 WL 7360682, at *7 n.4 (explaining the reasons why that court did not find *Oracle Corp.* and *Tabaian* persuasive).

Because the Defendant has not established that Dr. Greenspan became privy to any relevant confidential non-discoverable information during the course of his former employment as an irrigation specialist and Winegrowing Research and Development Manager, the Court finds that the Defendant has not established the second factor. Therefore, the Court is not persuaded that this

is one of those "rare" instances in which it is appropriate for the Court to exercise its discretion to disqualify Dr. Greenspan.[4] *United States v. Kernen Constr.*, No. 217CV01424WBSDMC, 2018 WL 5023411, at *1 (E.D. Cal. Oct. 16, 2018); *see also Chan*, 2023 WL 5068495 at *4 ("Generally, both factors must be present for disqualification to be appropriate.").

### b. The terms of the Protective Order do not provide a basis for the disqualification of Dr. Greenspan.

Defendant contends, in the alternative, that section 2.6 of the Protective Order provides an independent ground to disqualify Dr. Greenspan. (Doc. 149 at 17–18). Specifically, Defendant contends that "consulting for [Defendant]'s competitors is no different than being an employee of [Defendant]'s competitors," and therefore the protective order precludes Plaintiff from designating Dr. Greenspan as an expert under section 2.6 of the protective order because he currently works as a consultant for Defendant's competitors. *Id.* at 17 (stipulating that an expert must not be "a current employee of a Party or of a Party's competitor or "anticipated to become an employee of a Party or of a Party's competitor [at the time of retention]"). Plaintiff counters that there is a legally significant difference between "employee" and "independent consultant," such that section 2.6 of the Protective Order is immaterial to the present dispute. *Id.* at 26–27. The Court agrees with Plaintiff.

Despite pointing to the "plain text" of the Protective Order, the substance of Defendant's arguments is based on many of the concerns that are already taken into account through the considerations discussed *supra*. Those considerations are not material to the Court's interpretation of the plain text of the Protective Order.

"[A] protective order based on a written agreement between the parties is subject to the rules of contractual interpretation, including that the agreement should be enforced in accordance with the ordinary meaning of the language used in the agreement." *Koninklijke Philips Elecs. N.V.*

---

[4] The Court observes that, by Defendant's own admission, most of the confidential technical information that Dr. Greenspan was made privy to in his former employ is subject to discovery in the present action. (Doc. 149 at 13–14). The only confidential non-discoverable information that Defendant has identified as being disclosed to Dr. Greenspan during the course of his prior employ is information allegedly relevant to additional infringement contentions Plaintiff sought to add by amending its Preliminary Infringement Contentions. (Doc. 149 at 14). But the Court has stricken the Plaintiff's Amended Preliminary Infringement Contentions, meaning this information is no longer relevant. (*See* Doc. 146).

7

*v. KXD Tech., Inc.*, No. 205CV-01532-RLH-GWF, 2007 WL 2407038, at *2 (D. Nev. Aug. 16, 2007). Here, the plain meaning of employee does not include self-employed independent consultants, who—by definition—are independent and self-employed.[5] *Cf. Arellano v. Benov*, No. 1:13-CV-00558 AWI, 2014 WL 1271530, at *6 (E.D. Cal. Mar. 27, 2014) (citing favorably language from the Ninth Circuit that "[a] significant difference exists between employees and independent contractors" in considering the "plain meaning" of "employee" (quoting *Arredondo–Virula v. Adler*, 510 Fed. Appx. 581, 582 (9th Cir. 2013))).

Because the plain meaning of the Protective Order does not prohibit parties from designating a person who is anticipated to be retained as an *independent consultant* by a competitor as an expert, the Court determines that the Protective Order does not provide a valid ground for disqualifying Dr. Greenspan.

## IV.   CONCLUSION

Based on the foregoing, the Court DENIES Defendant Gallo's Motion to Disqualify Plaintiff Vineyard Investigations' Expert Dr. Mark Greenspan (Docs. 135, 137).

IT IS SO ORDERED.

Dated:   **December 2, 2024**           /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE

---

[5] This is not to say that the parties could not have agreed to define "employee" differently or otherwise written section 2.8 more broadly apply to independent consultants as well as "employees." *See, e.g.*, *Codexis, Inc. v. EnzymeWorks, Inc.*, No. 3:16-CV-00826-WHO, 2017 WL 5992130, at *6 (N.D. Cal. Dec. 4, 2017), *aff'd and remanded*, 759 F. App'x 962 (Fed. Cir. 2019), *and vacated*, No. 3:16-CV-00826-WHO, 2019 WL 5257936 (N.D. Cal. Aug. 22, 2019) (resolving a dispute involving a stipulated protective order provision similar to that which is at issue here, but that differed in its express inclusion of consultants).  But the parties did not do so here.