# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINEYARD INVESTIGATIONS, | Case No. 1:19-cv-01482-JLT-SKO |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL, AND MODIFYING CASE SCHEDULE** |
| v. | |
| E. & J. GALLO WINERY, | (Docs. 152, 156) |
| Defendant | |

## I.   INTRODUCTION

On December 9, 2024, Vineyard Investigations ("Plaintiff") filed a "Renewed Motion to Compel" (the "Motion").[1]  (Doc. 152.)  The parties submitted their "Joint Statement re Discovery Disagreement" (the "Joint Statement") pursuant to this Court's Local Rule 251 on January 8, 2025.  (*See* Doc. 156.)  Having considered the Motion, Joint Statement, and supporting exhibits, and for the reasons set forth below, the Court grants the Motion.

///

---

[1] E & J Gallo Winery ("Defendant") contends that Plaintiff's motion is an "attempt[] to circumvent the Local Rules for the Eastern District of California by untimely seeking reconsideration of the [undersigned]'s November 22, 2024 Order [(Doc. 146)] striking [Plaintiff]'s Amended Infringement Contentions and denying [Plaintiff]'s last "Renewed Motion to Compel."  (Joint Statement at 10.)  The Court is not persuaded.  Plaintiff's last "Renewed Motion to Compel" was predicated on its now-stricken Amended PICs, whereas Plaintiff's current "Renewed Motion to Compel" is predicated on newly served amended discovery requests.  Because the underlying basis for the instant motion differs from that underlying the Court's November 22, 2024, the Court does not construe the current motion as a motion for reconsideration.  Therefore, Local Rule 303 does not apply.

## II. BACKGROUND

Plaintiff initiated this action in October 2019, asserting that Defendant infringed two patents through its use of certain variable rate drip irrigation systems. (Doc. 1.) Two years later, Plaintiff filed its First Amended Complaint (the "FAC"), (Doc. 52), on October 22, 2021,[2] and Defendant filed its Answer, (Doc. 54), on November 12, 2021. In the FAC, Plaintiff alleges Defendant is infringing on inventions protected by three of its patents. (Doc. 52 ¶ 1.)

The three asserted patents are U.S. Patent No. 6,947,810 (the "'810 Patent"), U.S. Patent No. 8,528,834 (the "'834 Patent"), and U.S. Patent No. 10,645,881 (the "'881 Patent"). (*Id.*) These patents derive from, and share patent specification disclosures with, parent U.S. Patent No. 6,874,707, which was filed on May 31, 2001, and was issued by the U.S. Patent and Trademark office on April 5, 2005. (*Id.* ¶ 23.) Plaintiff concedes that for the purposes of this motion, the '881 patent is irrelevant.[3] Pursuant to the FAC, the patents can be described as follows:

> **The '834 Patent**: The '834 Patent describes and claims a "system for monitoring and managing plant growth" in which: "Combinations of data from sensors local to a vineyard, and from optional remote stations and sensors, is combined with a control system to accurately control the dispensing of water and chemicals such as insecticides, disease prevention fungicides and fertilizers." While the innovative systems of the patent could be advantageously applied to many different crops, some applications of the system are particularly adapted to improve the growing of grapevines in a vineyard. The systems and methods disclosed and claimed in the '834 patent provide significant advantages in such an environment, where smart automation reduces the high cost of vine growth management, and where soil and vine growth variability need to be addressed to improve yield and fruit quality.
>
> The inventions of the '834 Patent presented an important advance from existing vineyard drip irrigation systems at the time, which were manually controlled or were automated in simplistic ways with a timer or computer. Such systems did not "provide a high level of automation" like the systems of the patented invention, and did not address soil variability problems by "selectively provid[ing] different amounts of water to different plants" or plant areas. In addition, the invented system provided new and unconventional ways to automatically integrate "sophisticated information" about plant sizes, weather conditions and forecasts, and

---

[2] Plaintiff filed its initial complaint on October 19, 2019. On October 20, 2021, the Court granted Plaintiff's Motion for Leave to Amend, which added a claim alleging infringement on a third patent, the '881 patent. (Doc. 51).

[3] Pursuant to the Court's Scheduling Order, (Doc. 41), and N.D Cal. Patent Rule 4-3, the parties submitted a joint claim construction and prehearing statement on April 25, 2022. (Doc. 78.) The Court issued an order construing claims on July 7, 2023. (Doc. 94.) Plaintiff filed a Motion for Clarification on August 7, 2023, seeking clarification on Claim 29 of the '881 patent. (Doc. 99, 100, 102.) On May 7, 2024, the Court issued its order on Plaintiff's Motion for Clarification. (Doc. 124.) Based on this order, Plaintiff conceded that the '881 patent is irrelevant to the discovery dispute at hand. (Doc. 127-1 at 5.)

> soil conditions—which previously had only been used in the growing process, if at all, via "human intervention" that was "prone to errors and inefficiencies." Dr. Skinner's patented innovations advanced the field and solved these and other problems in the prior art—including through his use of real-time sensor and external data, processed according to various agricultural models, as control inputs to a variable rate irrigation system.
>
> **The '810 Patent**: The '810 Patent describes and claims inventions related to the overall system described above and includes specific claims relating to use of in-field sensors providing inputs to the smart automated control system. These in-field sensors can be attached to the conduit providing water and/or other nutrients. They can also be placed at other locations in the vineyard, such as for soil nutrient and moisture monitoring sensors that may need ground contact. The patent also discloses that the control for the system can be centralized or distributed, and that control can be associated with individuals or groups of sensors and emitters in order to assess and respond to variability in the vineyard.
>
> The inventions claimed in the '810 Patent improved on the prior art and provided the same benefits as discussed above with respect to the '834 Patent. Individually and together, the claimed inventions provide new and unconventional techniques for intelligent monitoring and management of crops such as grapevines—and do so by enabling the system to variably and "accurately control the dispensing of water" and other chemicals and nutrients.

(*Id.* ¶¶ 25, 27, 32 –33 (internal citations omitted).)

A scheduling conference was held in May 2021. (Doc. 40.) Following the conference, the Court issued a Scheduling Order that set deadlines for, among other things, the parties' respective infringement and invalidity patent disclosures. (Doc. 41 at 3.) The Order provides that such disclosures "shall be made in accordance with Rule 3 of the Patent Local Rules of the United States District Court for the Northern District of California, which is adopted for such limited purpose in this case." (*Id.*)

On August 2, 2021, Plaintiff served its Preliminary Infringement Contentions ("PICs" or "infringement contentions") on Defendant. In its PICs, Plaintiff specifically accuses three Variable Drip Irrigation ("VRDI") systems of infringing on the '810 and '834 patents: (1) the IBM VRDI system implemented at Colony Ranch; (2) the Netafim system implemented at Livingston Ranch, Ripperdan, Dusty Lane, and Barelli Creek; and (3) the Waterbit system implemented at Borden Hills and Valley Oak. (Docs. 127-11, 127-12, 127-13, 127-14.) Plaintiff also notes throughout its PICs that it "has not completed its investigation of the facts in this case . . . . As a result, these contentions are necessarily (and by [Defendant's] own conduct) limited to being

primarily based on publicly available information that [Plaintiff] has researched and collected." (Doc. 127-12.)

Plaintiff served its first set of requests for production and interrogatories on May 18, 2021. (*See* Doc. 133.) Defendant responded with objections on July 1, 2021, and thereafter amended its response to Interrogatory No. 1 on July 27, 2021. *Id.* Defendant provided supplemental responses to Interrogatory Nos. 6–9 on December 22, 2023, and to Nos. 2–4 on January 26, 2024. *Id.* Plaintiff served its second set of requests for production and interrogatories on March 6, 2023. *Id.* Defendant objected and did not respond or produce new documents, on April 5, 2023. *Id.* Defendant responded to Interrogatory Nos. 10-18, with respect to 10 vineyards, on January 26, 2024. *Id.*

On February 8, 2023, Plaintiff filed its first motion to compel responses from Defendant regarding "additional acres" and "NDVI systems." (Doc. 89-1.) On March 21, 2023, the undersigned denied that motion without prejudice pending the District Court's order on a then-pending claim construction dispute. (Doc. 91.) The district court issued an order on that claim construction dispute on July 7, 2023. (Doc. 94.)

On January 2, 2024, and February 5, 2024, Plaintiff sent letters to Defendant regarding the parties' respective discovery responses. In those letters, Plaintiff pointed to additional vineyards using allegedly infringing technology. (*See* Docs. 139-11–12.)

On May 3, 2024, Plaintiff again moved to compel, this time seeking an order requiring Defendant to supplement its responses to previously served requests for production and interrogatories because Defendant's responses only included information related to the specific vineyards that Plaintiff identified in PICs. (Doc. 123.) Defendant opposed the motion. (*See* Doc. 127.)

The Court denied Plaintiff's motion on July 24, 2024, finding that Plaintiff's "broad request requires further specificity" and limiting discovery to the allegedly infringing systems identified in its PICs. (Doc. 133 at 5.) The Court's order indicated that Plaintiff "may reduce the scope of these broad categorical identifications by identifying the infringing features the unnamed systems share with the systems named in its PICs" and specifically referenced the additional

1   specificity contained in the January and February 2024 letters—which was not included in the
2   discovery requests underlying the Motion to Compel—and noted that "similar specificity may be
3   sufficient to narrow the scope of its interrogatories and requests for production." (*Id*. at 10–11 &
4   n.4.)

5   On October 4, 2024, without seeking leave of court, Plaintiff served Defendant with
6   Amended Preliminary Infringement Contentions ("Amended PICs"), which included additional
7   specificity regarding unnamed systems. (Docs. 139-7–9.) Defendant then moved for the Court to
8   strike Plaintiff's Amended PICs on the basis that they did not comply with Local Rules 3-1 and 3-
9   6 and exceed the scope of the Court's July 24, 2024, order. (*See* Doc. 147 at 5–8.) Plaintiff
10  renewed its request that the Court compel Defendant to provide further responses to Plaintiff's
11  discovery requests in view of the "more specific definitions" and "available evidence" included in
12  its Amended PICs. (*Id*. at 8–12.)

13  While that motion was pending, on November 15, 2024, fact discovery closed. (*See* Doc.
14  131 at 1.)

15  The Court then granted Defendant's Motion to Strike and Denied Plaintiff's Renewed
16  Motion to Compel on November 22, 2024, finding that the Amended PICs were not compliant
17  with the local rules because Plaintiff had not sought leave of the Court to file them. (*See* Doc.
18  146.) Later that day, Plaintiff served amended interrogatories and requests for production on
19  Defendant, incorporating the narrowed definitions and specific identifications by name of
20  additional accused vineyards that had previously been included in the now-stricken Amended
21  PICs. (Joint Statement, Exs. 1–4.)

22  On December 9, 2024, Plaintiff filed their "Renewed Motion to Compel" responses to their
23  amended discovery requests, which Defendant opposes, (*see* Joint Statement at 9). The parties
24  submitted their Joint Statement pursuant to this Court's Local Rule 251 on January 8, 2025. (*See*
25  Doc. 156.)

26  **III.    DISCUSSION**

27  This long-running dispute centers on whether Defendant's discovery obligations are
28  limited to the 10 "experimental" vineyards using the three specific VRDI systems that Plaintiff

identified in its PICs (namely, the IBM VRDI system, the Netafim system, and the Waterbit system), or whether Defendant is required to provide discovery on additional vineyards which Plaintiff alleges may be using unidentified, but nonetheless infringing, irrigation systems. As discussed below, the Court previously denied Plaintiff's request to compel based on its original requests for production as the Court found those requests too broad and required further specificity. (*See* Doc. 133.) The Court now finds that Plaintiff's amended discovery requests have remedied the defects the Court identified in its prior order. Therefore, Plaintiff's Motion (Doc. 152) will be granted.

**A.    Legal Standards**

District courts have broad authority in managing discovery. *See, e.g.*, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (noting that the Court "has wide discretion in controlling discovery"). "Although the Federal Rules of Civil Procedure place no time limit on the outside date for the filing of a motion to compel discovery, motions to compel filed after the close of discovery generally are deemed untimely." *Thomason v. City of Fowler*, No. 1:13-CV-00336-AWI-BAM, 2014 WL 4436385, at *4 (E.D. Cal. Sept. 9, 2014) (citing cases). However, "the matter is left to the broad discretion possessed by the district courts to control discovery." *Id.*; (*see also* Doc. 41 at 5 ("A party's failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff *may* result in denial of the motion as untimely.") (emphasis added)).

    1.    <u>Modifying the Scheduling Order & Reopening Fact Discovery</u>

Under Federal Rule of Civil Procedure 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citation and internal quotation marks omitted). "While a court may take into account any prejudice to the party opposing modification of the scheduling

order," the focus of the Rule 16(b) inquiry "is upon the moving party's reasons for seeking modification." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 737 (quoting *Johnson*, 975 F.2d at 609).

"When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery," district courts must consider the following factors:

> (1) whether trial is imminent, (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1516 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)).

"While no one factor is necessarily dispositive, the Ninth Circuit has instructed that the primary focus should be on whether the party seeking to reopen discovery has acted diligently." *De Paz v. Wells Fargo Bank, N.A.*, 2020 WL 2404897, at *2 (C.D. Cal. Feb. 18, 2020) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir 1992)). Finally, "[w]hen the motion to extend time is made after time has expired, the [c]ourt must also consider excusable neglect [under Rule 6(b)]." *Multiple Energy Technologies, LLC v. Casden*, 2022 WL 16972482, at *4 (C.D. Cal. Nov. 16, 2022) (citing Fed. R. Civ. P. 6(b)(1)(B)).

Under Rule 6(b), "[w]hen an act must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect 'encompasses situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.'" *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd.*, 507 U.S. 380, 388, 394 (1993)) (alterations omitted). "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395).

In performing this analysis, courts consider: "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395). These factors are "not an exclusive list," *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997), and the court must consider "all relevant circumstances," *Pioneer*, 507 U.S. at 395. Rule 6(b) "[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (alteration in original) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983)).

2. Motion to Compel

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. County. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)). The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

**B.   Analysis**

  1.   <u>Modifying the Scheduling Order & Reopening Fact Discovery</u>

The Court's consideration of the motion necessarily requires the Court to consider whether to modify the scheduling order under Federal Rule of Civil Procedure 16(b) and reopen of fact discovery under Rule 6(b), as the amended interrogatories and requests for production were served after the close of fact discovery.[4]

Rule 16(b)(1) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(1). Under Rule 16(b)(1), the Court must consider the diligence of the party seeking amendment of the scheduling order and may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citations omitted). Under this standard, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

Similarly, Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In

---

[4] The Court observes that a "Motion to Compel" by itself is not the correct procedural mechanism where the underlying discovery requests were served after the close of fact discovery. Instead, the any such motion to compel should also seek to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(1) and to re-open discovery under Rule 6(b)(1)(B). However, because in any analysis under Rule 16(b)(1) or Rule 6(b)(1)(B) the Court is guided by the good cause standard, *compare Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 595 (W.D. Wash. 2013) (considering a motion to re-open discovery under Rule 6(b)(1)(B)), *with Woodard v. City of Menlo Park*, No. C 09-3331 SBA, 2012 WL 2119278, at *1 (N.D. Cal. June 11, 2012) (considering a motion to re-open discovery under Rule 16), and both parties addressed that standard (*see* Joint Statement at 8, 11–13), the Court will address the threshold Rules 16(b) and 6(b)(1)(B) issues. *See Anderson v. United States*, 298 F.3d 804, 807 (9th Cir. 2002) ("The substance of the motion, not its form, controls its disposition.").

9

exercising its discretion to determine whether a litigant has established excusable neglect under Rule 6(b)(1)(B), the court considers four factors: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Rule 6(b)(1), "like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983)).

Here, the Court finds good cause to modify the pretrial schedule and reopen fact discovery to accommodate Plaintiff's amended discovery requests—including (1) Amended First Set of Interrogatories (Nos. 1–9), (Doc 156-3); (2) Amended First Set of Requests for Production of Documents (Nos. 1–40) and Requests for Inspection (Nos. 1–4), (Doc. 156-4); (3) Amended Second Set of Interrogatories (Nos. 10–18), (Doc. 156-5); (4) Amended Second Set of Requests for Production of Documents (Nos. 41–56), (Doc. 156-6)—and corresponding Motion.

The primary focus of the Court's assessment of good cause under Rule 16(b)(1) is whether the moving party was diligent. *See De Paz v. Wells Fargo Bank, N.A.*, 2020 WL 2404897, at *2 (C.D. Cal. Feb. 18, 2020) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Although Defendants contend otherwise (Joint Statement at 11–13), the Court finds that Plaintiff was diligent in seeking the discovery information at issue. As detailed above, Plaintiff sought to compel further information on unnamed systems beginning as early as February 2023. (*See* Doc. 89.) Over the next several years, Plaintiff repeatedly sought this information from Defendant. After the claim construction issue was resolved, Plaintiff wrote letters addressing the issue of unnamed vineyards and systems. (*See* Doc.139-11–12.)

Plaintiff again moved to compel Defendant to provide that information based on its initial discovery requests. (*See* Doc. 123.) When this Court denied that motion, Plaintiff misguidedly sought to heed the Court's guidance that Plaintiff "may reduce the scope of these broad categorical

10

1   identifications by identifying the infringing features the unnamed systems share with the systems
2   named in its PICs" by filing amended PICs without first seeking leave of Court to do so as
3   required under the local rules. (*See* Doc. 146.) When the Court granted Defendant's motion to
4   strike the Amended PICs in light of that procedural defect, Plaintiff immediately amended its
5   discovery requests to remedy the defect the Court identified in its second order denying Plaintiff's
6   motion to compel and the procedural matter the Court identified in its third order denying
7   Plaintiff's motion to compel. (*See* Joint Statement, Decl. of Corey Johanningmeier ¶¶ 2–5, Exs.
8   1–4; Doc. 133.) While several of Plaintiff's fillings seeking the discovery material at issue have
9   ultimately been procedurally defective, the Court finds that Plaintiff has acted in good faith in
10  seeking the discovery material at issue.

11  In light of Plaintiff's continued and repeated requests in the form of letters, discovery
12  requests for the discovery material at issue, the Court finds that Plaintiff was diligent in pursing
13  their foreseeable discovery requests that are likely to lead to relevant evidence. Further, in light of
14  this diligence and the fact that Defendants were put on notice that Plaintiff was seeking this
15  discovery information as early as February 2023—setting aside any corresponding delay in the
16  litigation, which the Court addresses separately—the Court finds that Defendant will not be
17  prejudiced by a modification of the scheduling order and the reopening of fact discovery.

18  There are two factors relevant to the Court's good cause analysis that weigh against
19  modification of the scheduling order: (1) while the currently scheduled trial date, November 10,
20  2025, is not imminent, *cf. Huerta v. County of Tulare*, No. 1:17-CV-01446-EPG, 2024 WL
21  307786, at *3 (E.D. Cal. Jan. 26, 2024) (finding a June trial date was not "imminent" in January of
22  the same year), reopening discovery will result in some delay in some of the pre-trial proceedings
23  and (2) the request is opposed, (*see* Joint Statement at 11–13).

24  However, notwithstanding those two factors, the Court finds that in light of its broad
25  discretion to manage discovery, *see, e.g.*, *Hallett*, 296 F.3d at 751; *Little*, 863 F.2d at 685 (9th Cir.
26  1988), and its interest in "the general purpose of seeing that cases are tried on the merits,"
27  *Ahanchian*, 624 F.3d at 1259 (quoting *Rodgers*, 722 F.2d at 459), the balance of factors weighs in
28  favor of finding good cause to modify the scheduling order under Federal Rule of Civil Procedure

16(b) and excusable neglect justifying the reopening fact discovery under Rule 6(b).

### 2. Motion to Compel

The Court now turns to the merits of Plaintiff's motion. In the Scheduling Order (Doc. 41), the Court adopted the Local Patent Rules for the Northern District of California. "The overriding principle of the [Patent Local Rules for the Northern District of California] is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D. Cal. Nov. 26, 2003). The Rules require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). The rules require the party claiming patent infringement to serve a "Disclosure of Asserted Claims and Infringement Contentions" that contains "[s]eparately for each asserted claim, each accused . . . instrumentality ('Accused Instrumentality') . . . of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known." Patent L.R. 3-1(b). The rules "place the burden of specifically identifying all accused devices on the plaintiff." *Infineon Technologies AG v. Volterra Semiconductor Corp.*, 2012 WL 6184394, at *3 (N.D. Cal. Dec.11, 2012). "It does 'not tolerate broad categorical identifications' or 'the use of mere representative examples.'" *Id.* (quoting *Oracle America v. Google Inc.*, 2011 WL 4479305, at *2 (N.D. Cal. Sep. 26, 2011)).

However, as this Court has previously held, and contrary to Defendant's assertions (*see* Joint Statement at 11–12), there are instances where plaintiffs may be entitled to discovery related to allegedly infringing devices that are not named in its PICs. (*See* Doc. 133 at 9.) Namely, a Plaintiff may be entitled to discovery "if the plaintiff does not know of the allegedly infringing product when it serves its infringement contentions and could not have discovered the product absent discovery." *Infineon Technologies, AG*, 2012 WL 6184394, at *3. "In such circumstances, the plaintiff nevertheless must 'articulate how the [unknown] accused products share the same, or substantially the same, infringing [structure]' with a named product." *Id.* (quoting *Bender v.*

*Freescale Semiconductor, Inc.*, No. 09–1156 PHJ (MEJ), 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010); *see, e.g., Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) (considering devices "reasonably similar" because they were structurally identical and operated in a manner consistent with Plaintiff's infringement theory).

In its July 2024 order denying Plaintiff's Motion to Compel Defendant's response to its original interrogatories and requests for production, the Court found that "Plaintiff ha[d] failed to articulate how the unknown accused products share the same, or substantially the same, infringing structure as the named VRDI systems, nor ha[d] Plaintiff provided a 'reasonable inference' that all VRDI systems infringe on Plaintiff's patents." (Doc. 133 at 9–10.) More specifically, the Court found Plaintiff's original discovery requests to be overly broad because they "[sought] discovery on a much broader set of technologies [than the specific systems identified in their complaint] and the VRDI systems [they] describe[ were] not limited to systems that vary the amount of water or other materials they deliver *in response to date or signals from in-field sensors*." (*Id.* at 10.)

Despite these flaws, the Court advised that "Plaintiff may reduce the scope of these broad categorical identifications by identifying the infringing features the unnamed systems share with the systems named in its PICs." (*Id.* at 10–11 (citing *Monolithic Power Systems*, 2015 WL 5948159, at *2 ("If, however, Plaintiff's representation that information regarding Defendant's products are not publicly available and cannot be easily obtained is accurate, and Plaintiff articulates how the technology concerns the patents-in-suit and the alleged infringement, the court is prepared to order Defendants to provide discovery on similar, unaccused products."); *Seoul Semiconductor Co. v. Feit Electric Co*, No.: CV 22-05097-AB (SHKx), 20023 WL 8242156, at *3 (C.D. Cal. July 18, 2023) ("Plaintiffs must, at a minimum, identify shared infringing features between the charted and uncharted products."); *Aavid Thermalloy v. Cooler Master Co.*, No.17-cv-05363-JSW, 2018 WL 11348437 (N.D. Cal. July 18, 2018) (allowing discovery into unnamed products where the discovery requests are limited to products that conform to the same *infringing design* as the accused products); *Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*, No. C 08-986 SI, 2009 WL 1834147, 2009 U.S. Dist. LEXIS 53942 (N.D. Cal. June 24, 2009) (finding that failure to specifically accuse products is not dispositive where defendant had notice that plaintiff

13

accused "what is purportedly the same process in a different product.")).)

Therefore, the question now before the Court is whether Plaintiff's Amended Interrogatories and Requests for Production remedy the defect identified in the first order "by identifying the infringing features that the unnamed systems share with the systems named in its PICs." (Doc. 133.)

The Court is persuaded that the amendments to Plaintiff's interrogatories and requests for production remedy the defects previously identified, as they address the Court's concern that the unnamed VDRP systems were "not limited to systems that vary the amount of water or other materials they deliver *in response to date or signals from in-field sensors*." (*Id.* at 10.) The amended discovery requests define "Other Variable Rate Irrigation" as "irrigation that is operated or controlled to vary the amount of water or other chemicals delivered to plants, such that for example, different blocks, sub-blocks, zones, sets, pixels, rows, groupings of vines, or individual vines within a vineyard may selectively receive different amounts of water or other chemicals in a time period" and "Other Variable Rate Irrigation systems" as those which "have one or more sensors in, or in proximity to, the vineyard . . . or other sensors described in the Asserted Patents." (*See, e.g.*, Joint Statement, Ex. 1 at 3–4.) The discovery requests then define "Other Variable Rate Irrigation systems" alleged to infringe on the '834 Patent as those that "utilize at least one sensor in, or in proximity to, the vineyard, and also employ external data including without limitation, satellite or drone imagery, other remotely sensed data, and/or modeling as described in the Asserted Patents." (*Id.* at 4.) Finally, the requests further specify the "shared infringing features" of accused systems with language stating "[t]o the extent that Gallo utilizes one or more in-field sensors, and controls irrigation variably between blocks or sub-blocks in these vineyards using sensor data or external data . . . they are Accused Vineyards." (*Id.* at 4.) These narrower definitions "connect[] an irrigation system to specific data signals and in-field sensors," which is the kind of specificity the Court previously indicated "may be sufficient to narrow the scope of its interrogatories and requests for production." (Doc. 133 at 11 n. 4.) They also provide "a clear explanation of the technology at issue, *and the relation to the patents-in-suit*." (Doc. 133 at 10 (quoting *Monolithic Power Systems v. Silergy Corporation*, No. 14-cv-01745-VC (KAW), 2015

WL 5948159 (N.D. Cal. Oct. 14, 2015)).

Because the Court has determined that the amended discovery requests remedy the previously identified defects, the Court will grant Plaintiff's motion.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff Vineyard Investigation's Renewed Motion to Compel (Docs. 152, 156) is GRANTED.  It is hereby ORDERED that:

1. Defendant Gallo shall complete production of documents and respond in full to Vineyard Investigations' Amended Requests for Production and Interrogatories by no later than March 14, 2025.

2. The operative scheduling order (Doc. 154) is MODIFIED as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Opening Expert Disclosures | February 7, 2025 | March 28, 2025 |
| Rebuttal Expert Disclosures | March 21, 2025 | April 18, 2025 |
| Completion of Expert Discovery | April 4, 2025 | May 2, 2025 |
| Non-Dispositive Motion Filing Deadline | April 18, 2025 | May 14, 2025 |
| Dispositive Motion Filing Deadline | April 18, 2025 | May 19, 2025 |
| Deadline to Hear Non-Dispositive Motions | May 28, 2025 | June 18, 2025 |
| Dispositive Motion | May 30, 2025 | June 23, 2025 |

15

| Event | Current Deadline | New Deadline |
|---|---|---|
| Hearing Deadline | | |
| Deadline to Provide Proposed Settlement Conference Dates | August 12, 2025, or 90 days before trial, whichever is later | August 12, 2025, or 90 days before trial, whichever is later |
| Pre-Trial Conference | August 25, 2025, at 1:30 p.m. in Courtroom 4 before the Honorable Jennifer L. Thurston, United States District Judge | September 15, 2025, at 1:30 p.m. in Courtroom 4 before the Honorable Jennifer L. Thurston, United States District Judge |
| Trial | November 10, 2025, at 8:30 a.m. in Courtroom 4 before the Honorable Jennifer L. Thurston, United States District Judge | November 10, 2025 at 8:30 a.m. in courtroom 4 before the Honorable Jennifer L. Thurston, United States District Judge (no change) |

IT IS SO ORDERED.

Dated:   **February 3, 2025**                    /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE