**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINEYARD INVESTIGATIONS, | Case No. 1:19-cv-01482 JLT SKO |
| Plaintiff, | ORDER DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING |
| v. | |
| E. & J. GALLO WINERY, | |
| Defendant. | |

The Court has completed a detailed review of the record of the case, including prior orders and briefs. After considering the patents-in-suit and the relevant technologies in more detail, the Court finds that its decision-making will benefit from supplemental briefing.

## I.    DIRECT INFRINGEMENT AND ANTICIPATION

It is well-established that direct, "literal infringement requires that each and every limitation set forth in a claim" is found in an accused product or is performed by the direct infringer. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) (citation omitted).[1] In regard to the parties' dispute over the "sensors associated with" limitation, it is undisputed that Plaintiff identified three types of sensors used in Defendant's accused systems: flow meters, pressure sensors, and soil moisture sensors. (Doc. 172-1 at 20; Doc. 180-1 at 66 (undisputed fact No. 88).)

As the Court explained in its claim construction order, while a sensor may be associated

---

[1] The parties do not appear to argue over the doctrine of equivalents ("DOE") or the reverse DOE.

1

with a "plurality of plants," the asserted claims do not read on (i.e., cover) systems or methods where a single sensor is associated with a "field, region, or plot of land." (Doc. 94 at 29–35.) From this, Defendant appears to advance two interrelated arguments.

First, Defendant contends that because its system uses one soil moisture sensor per 650 vines or more, (Doc. 172-1 at 20; Doc. 180-1 at 29 (undisputed fact No. 31)), each of its soil moisture sensor is not associated with individual plants or localized plant groups, but with a "field" or "a plot of land," (*see* Doc. 172-1 at 19–20, 22–24). As such, Defendant maintains that none of its systems infringes on the asserted claims.

Second, Defendant appears to argue in the alternative that even if a soil moisture sensor is associated with 650 plants, it is also associated with a "field," a "homogenous agricultural area," or a "plot of land," (*see* Doc. 172-1 at 20, 23 & n.16); the latter three are what Hall teaches.[2] Accordingly, Defendant may be trying argue that if the claims-in-suit read on its systems— wherein each moisture sensor is associated with a "field" or a "plot of land"—as to prevent Defendant from practicing prior arts like Hall, the asserted claims are necessarily invalid. (*See id*. at 24.) This is because a patent claim which "exclude[s] the public from practicing the prior art[] . . . is anticipated, regardless of whether it also covers subject matter not in the prior art." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999) (citing *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 781 (Fed. Cir. 1985)); *see also Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 6 (1966) ("Congress may not authorize the issuance of patents whose effects are to . . . restrict free access to materials already available.").

However, the parties do not clearly articulate their positions regarding the moisture sensors, especially regarding the meaning—or the size—of a "field," a "homogeneous agricultural area," or "a plot of land." The Court therefore requests the parties to submit supplemental brief clarifying their positions and arguments, as detailed below.

Next, with respect to the flow meters and pressure sensors, Plaintiff argues that they are

---

[2] The Court notes that the file history of the patents-in-suit clearly shows that the named inventor deliberately distinguished away Hall. (Doc. 94 at 34.) In particular, the named inventor argued that Hall teaches, inter alia, the use of direct sensors that "are not localized to the plant level." (Doc. 70-10 at 73 (citation omitted).) Indeed, the named inventor expressly quoted portions of Hall stating that "a homogeneous agricultural area" may include, for example, a "one-acre area" or a "field." (Doc. 70-10 at 73–74; Doc. 94 at 34.)

"sensors" within the meaning of the patents-in-suit, (Doc. 185 at 18), even though they do not measure anything about *actual* plant/field conditions, as Defendant correctly points out, (Doc. 172-1 at 21).[3] Plaintiff further contends "there is no requirement" that flowrate and pressure data from the sensors must be "entered into an irrigation schedule." (Doc. 185 at 16.) Therefore, under Plaintiff's theory of infringement, a water sprinkler system equipped with little more than a generic process control panel/computer, basic flow/pressure sensors, and passive water emitters might infringe, for instance, claim 2 of U.S. Patent No. 6,947,810. *See* col. 7 ll. 3–6 ("[T]he emitters can be passive[;] for example, they can be simple through-holes sprinkler heads so that they are always 'on' for all dispensing."). If so, claim 2 may be anticipated or obvious,[4] which poses a claim-construction issue because claims should be construed to preserve validity. (*See* Doc. 172-1 at 24 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005).) The Court has similar concerns for all the other asserted claims and, therefore, believes that it may benefit from additional briefing on (i) the risks of anticipation and obviousness and (ii) how the asserted claims should be interpreted accordingly.

## II.   PATENT ELIGIBILITY

Defendant's briefs directly and indirectly allude to 35 U.S.C. § 101 patent eligibility on numerous occasions. (*See, e.g.*, Doc. 172-1 at 7–8 ("It is important to emphasize that in Gallo's accused experimental vineyards, a human made the core decisions, something humans have been doing for centuries—thinking about the weather, looking at the plants, and deciding when and where to apply water."); *id*. at 8 n.3 (appearing to seek "permission to file a short supplemental motion for summary judgment of invalidity of all Asserted Claims under 35 U.S.C. § 101"); Doc.

---

[3] The Court further notes that many of the sensors mentioned in the specification measure plant or field conditions. For example, photodetectors, which measure the amount of sunlight, and temperature sensors are related to weather conditions in the field. (*See* '834 patent col. 5 ll. 38–42.) Similarly, soil nutrient and moisture sensors detect local field conditions. (*Id*. at col. 5 ll. 39–40.) Likewise, leaf wetness detectors, (*id*. at col. 4 ll. 43–44), and pH probes, (*id*. at col. 8 ll. 9–11), are directly related to plant conditions. Water flow meters and pressure sensors, however, may not be analogous to the aforementioned sensors—rather, they measure the conditions in an artificial system, at least in the present context.

[4] The obviousness of one embodiment renders the entire claim obvious. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 963 (Fed. Cir. 2014) (Prost, C.J.) ("Appellants instead had the burden of showing that *any* compounds within the broad genus claimed by the '029 patent[] . . . were obvious at the time of the invention." (emphasis added)).

3

180 at 9 (arguing that the asserted *claims* do not recite or embody any technological improvement[5]).) The Court also acknowledges Defendant's argument that there may be some tension between (a) Plaintiff's prior representation that the patents-in-suit are directed to a highly automated and precise system of irrigation at a localized, "plant level" and (b) Plaintiff's current position that Defendant's systems—some of which appear to require substantial human intervention and only use ordinary flow/pressure sensors and water emitters—infringe the patents-in-suit. (*See* Doc. 172-1 at 15–16; Doc. 180 at 7, 11; *see also* U.S. Patent No. 8,528,834 col. 6 ll. 56–58 (stating that passive water emitters may be used).)

The Court previously denied Defendant's motion to dismiss based on § 101. (Doc. 31.) Now, with a complete record at hand and with the benefit of recent Federal Circuit decisions that have helped to clarify the relevant jurisprudence,[6] the Court is not necessarily opposed to revisiting § 101 on summary judgment. Accordingly, Defendant may choose to file a supplemental motion for summary judgment on *any* § 101-related issues, so long as Defendant clearly addresses any Rule 56(f) and Rule 54(b) implications, and how the Federal Circuit's recent (i.e., post-January 4, 2021) § 101 opinions may inform this Court's decision. If Defendant chooses to do so, such motion must be filed within 30 days of this order; and Plaintiff may file a response 21 days thereafter. The briefs may not exceed 15 pages.

### III.   CONCLUSION AND ORDER

In sum, the Court directs the parties to submit additional briefing on the following two issues. First, where there is one soil moisture sensor per 650 vines, (a) whether said sensor is associated with individual plants or localized plant groups, (b) whether said sensor is associated with a "field," a "homogenous agricultural area," or "a plot of land," and (c) whether there are any other issues or problems that the Court should address regarding the moisture sensors.

---

[5] Under Federal Circuit case law, the alleged technological improvements must be reflected in the actual claims. *Trs. of Columbia Univ. in City of New York v. Gen Digital Inc.*, 169 F.4th 1320, 1329 (Fed. Cir. 2026).

[6] *E.g.*, *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026); *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025); *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1370 (Fed. Cir. 2024); *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023); *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021).

Second, whether construing the "sensors" limitation to include flow meters and pressure sensors risks invalidating the claims-in-suit as anticipated or obvious;[7] and, if so, how that term should be interpreted accordingly.

Within 21 days of this order, Defendant **SHALL** file a brief addressing the foregoing issues. Plaintiff **SHALL** file a response 14 days thereafter. The briefs shall be limited to no more than 15 pages.

IT IS SO ORDERED.

Dated:    **April 14, 2026**

UNITED STATES DISTRICT JUDGE

---

[7] Considering that anticipation and obviousness are closely related doctrines, the parties may choose to address the question of whether an ordinarily skilled artisan would have found it desirable/obvious to try to start with a known technique or prior art and further specify that it should be done at a localized, "plant level." *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417–21 (2007); *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 185 (1925). The Court will exercise its own independent judgment as to the validity of the patents-in-suit unless IPR, PGR, reexamination, or some other theory of estoppel applies.